St. Louis & San Francisco Railroad Company *v.*
Woodruff Mills.

[62 South. 171.]

1. CARRIERS. *Bills of lading. Interstate commerce. State regulations.
Carmack amendment. Code 1906, section 4851. Courts. Rules
of decision. Actions. Weight of evidence.*

Since the adoption by Congress of the Carmack amendment to the
interstate Commerce Act of February 4, 1887 (Act June 20, 1906,
chapter 3591, section 7, 34 Stat. 393, U. S. Comp. St. Supp. 1911,
p. 1307) covering the subject of bills of lading for interstate
shipments, section 4851 of Code 1906 making bills of lading con-
clusive in the hands of *bona fide* holders for value, against the
person or corporation issuing them, that the property described
therein was received by the carrier, has no application to inter-
state shipments of freight.

2. COURTS. *Rules of decision. Decisions of the United States Supreme
Court authority in state courts.*

The construction given to an act of Congress by the Supreme Court
of the United States is binding on all State courts.

3. CARRIERS. *Bills of lading. Weight of evidence.*

In a suit against a carrier by the consignee of a shipment of
cotton for the difference between the actual weight and the
weight as shown by the bill of lading, the recitals of the bill
of lading are *prima facie* correct, but an agreement that the
"identical cotton" received by the carrier was delivered to the
consignee overcomes the presumption, for if the identical cotton
was delivered, the carrier has performed his contract.

APPEAL from the circuit court of Lee county.

HON. JOHN H. MITCHELL, Judge.

Suit by the Woodruff Mills against the St. Louis &
San Francisco Railroad Company. From a judgment
for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*W. A. McDonald,* for appellant.

Our statute, Code 1906, sec. 4851, making bills of lad-
ing conclusive evidence of the receipt of the goods by the

carrier called for in the bill of lading, does not apply in this case, because appellee purchased and was the owner of the cotton before it was delivered to appellant. *Meyer* v. *Peck,* 28 N. Y. 598.

Appellee's failure to notify appellant that the consignment of cotton received by it weighed less than that called for in the respective bills of lading, estops appellee to deny the correctness of the weights given in the bills of lading. *Hilliard* v. *Coyle,* 46 Miss. 309; *Staton* v. *Bryant,* 55 Miss. 261.

It is fair to presume that the weigher of the cotton for Thompson & Wallace was honest, and correctly weighed the cotton, and furnished the correct weights to the agent of appellant, and that he issued bills of lading for the weights of the cotton as furnished him, and the weigher of the cotton on the part of appellee was honest, and correctly weighed the cotton when received by it. It follows, therefore, necessarily and logically, that the cotton embraced in these assignments, while at the compress in Tupelo, Mississippi, lay out in the open, exposed to rain, sleet and snow, thereby absorbing moisture, and that after being compressed and placed in a closed car for shipment, where it remained for about two weeks in transit, it dried out, and that this drying out was the cause of the variation in weight, we therefore think the case should have gone to the jury on that proposition.

The proof also showed that cotton, after being baled, though not exposed to rain or dampness, if placed under cover, in a closed place, would lose in weight, and the case should have gone to the jury on the question as to what these shipments lost in weight by being placed in a closed car for about two weeks before being weighed by appellee, although it was not shown that these particular bales of cotton were exposed to rain or dampness before being shipped.

This statute, Code 1906, section 4851, if enforced in this case, would be violative of the clause in section 8 of

article 1 of the Constitution of the United States, which provides that Congress shall have the power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes; and it is in violation of the provisions of the Act of Congress of February 4, 1887, 24 Statutes at Large, page 379, entitled: ''An Act to Regulate Commerce,'' and of the amendments of said act; and it is in violation of the Fourteenth amendment of the Constitution of the United States, ''Nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law.''

In the instant case, the effect of this statute, if enforced, would be to take the property of appellant without the due process of law; it would deprive appellant of equal protection of the law; it would be an interference with appellant's property rights.

*W. F. Evans, J. W. Buchanan, W. A. McDonald* and *J. G. Egan,* for appellant.

Congress having regulated the subject of bills of lading and liability thereunder upon interstate shipments, by the Carmack Amendment of 1906, section 4851 of the Mississippi Code of 1906, cannot apply to interstate shipments.

By what is known as the Carmack amendment to the 20th section of the Interstate Commerce Act of February 4, 1887, which amendment was enacted by the Act of Congress of June 29, 1906 (34 Stat. at L. 584, chap. 3591, U. S. Comp. Stat. Supp. 1911, p. 1307), it is provided as follows:

''That any common carriers, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier,

railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass; and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; provided that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

"That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury as it may be required to pay the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof."

Section 4851 (4299) of the Mississippi Code of 1906 is as follows: Bill of lading conclusive of receipt of goods. —Every bill of lading or other instrument in the nature or stead thereof acknowledging receipt of property for transportation, shall be conclusive evidence in the hands of a *bona fide* holder for value, whether by assignment, pledge or otherwise, as against the person or corporation issuing the same, that the property had been so received.

The shipments of cotton in question were made from Tupelo, Mississippi, to Woodruff, South Carolina, in January, 1911, going over the line of railroad of the St. Louis & San Francisco Railroad Company from Tupelo to Birmingham, Alabama, and over connecting lines of railroad from Birmingham to Woodruff.

Section 4851 of the Mississippi Code, referred to, "is not a mere rule of evidence, but has the design to change the character and legal effect of the contract evidenced by the bill of lading." *Hazard* v. *Illinois C. R. Co.,* 67 Miss. 32, 7 So. 280; *Loyd* v. *Kansas City, M. & B. R. Co.,* 88 Miss. 422, 40 So. 1005.

The nature of the statute is further explained in the case of *Yazoo & M. V. R. Co.* v. *Bent,* 94 Miss. 681, 47 So. 805, 22 L. R. A. 821; *I. C. R. R. Co.* v. *Lancashire Ins. Co.,* 79 Miss. 114, 30 So. 43.

The shipment referred to in the case of *Yazoo & M. Valley R. Co.* v. *Bent, supra,* was made in June, 1905, prior to the enactment of the Carmack Amendment of June 29, 1906, and the Carmack Amendment is not referred to in the opinion and was not involved in the decision of the case.

The shipments in question in the case of *Hazard* v. *Illinois Central R. Co.,* and in the case of *Loyd* v. *Kansas City, M. & V. R. Co., supra,* were made before the enactment of the Carmack Amendment, and the question of interference of section 4851 of the Mississippi Code with interstate commerce was not discussed in those opinions.

The shipments in question in this case were made after the enactment of the Carmack Amendment, and that amendment is involved in the consideration of this case.

The Carmack Amendment covers these points:

(a)  The issuance of a bill of lading or receipt by a common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state.

(b)  It imposes a liability upon the carrier issuing the bill of lading to the holder thereof for any loss, damage or injury to the property caused by the issuing carrier or any other carrier to which the same may be delivered or over whose lines the property may pass.

(c)  It prohibits any contract, receipt, rule or regulation to exempt the carrier from the liability imposed by the Carmack Amendment.

(d)  A proviso is added that nothing in the Carmack Amendment shall deprive any holder of a receipt or bill of lading of any remedy to right of action which he has under an existing law.

(e)  It provides that the carrier issuing the receipt or bill of lading shall be entitled to recover from the carrier on whose line the loss, damage or injury which shall have been sustained, the amount of such loss, damage or injury which the issuing carrier may be required to pay to the owner of the property, as evidenced by any receipt, judgment or transcript of judgment.

Section 4851 of the Mississippi Code imposes an obligation upon the carrier issuing the bill of lading or receipt whereby the receipt for the property is made conclusive evidence in the hands of a *bona fide* holder for value, as against the carrier issuing the same, that the property had been received.

The Carmack Amendment requires the initial carrier to issue a receipt or bill of lading only for the property actually received, and makes the initial carrier liable to the holder of the bill of lading only for loss, damage or injury to the property actually received, caused by the initial carrier, or by any carrier to which the property may be delivered or over whose line the property actually received may pass.

The provision prohibiting any contract, receipt, rule or regulation to exempt the common carrier from liability imposed by the Carmack Amendment applies to a contract, etc., that will attempt to exempt the common carrier from liability only with reference to the property actually received.

The provision giving the carrier issuing the bill of lading, and which settles for the loss, damage or injury which occurs on the line of a connecting carrier, the right to recover the loss, damage or injury from the connecting carrier, applies only to the loss, damage or injury to the property actually received by the initial carrier.

The Federal statute makes the initial carrier liable only for the property actually received.  The Mississippi statute makes the initial carrier liable to a *bona fide* holder for value of the bill of lading upon a part of the

receipt as declared by the bill of lading, that is, the part stating that the weight is subject to correction. The latter part the Mississippi statute strikes out, as construed by this court.

Under the Federal statute the initial carrier would have a right to claim the benefit of the phrase that the weights are subject to correction. Under the Mississippi statute, as construed by this court in the case of *Yazoo & M. Valley R. Co.* v. *Bent, supra,* the initial carrier would not be permitted to claim any benefit from the phrase— "weights subject to correction."

The Federal statute makes the initial carrier liable to the lawful holder of the bill of lading, who might be the consignor, or any other person to whom the bill of lading liable to the *bona fide* holder for value of the same, which would not in many cases include the consignor.

The Federal statute makes the initial carrier liable for "any loss, damage or injury to such property, caused by it or any common carrier, railroad or transportation company to which such property may be delivered, or over which line or lines such property may pass."

The Mississippi statute makes the carrier which issues the bill of lading liable to the *bona fide* holder for value of the same weights stated in the bill of lading, striking out the phrase that the weights are subject to correction.

The Mississippi Statute thus covers the subject governed by the Federal statute, but on some particular points the Federal statute makes different provisions. The result is confusion and conflict in the application of the two statutes.

The United States by legislating upon the subject by the Carmack Amendment showed its intention to supersede and overrule any state legislation upon the subject.

In the case of *Adams Express Co.* v. *Croninger,* decided by the United States supreme court on January 6, 1913, reported in Vol. 33, No. 6, page 148, supreme court report, the court considered the effect of the Carmack

Amendment with reference to a provision in the statute or constitution of a state which prohibited a provision in a bill of lading limiting the valuation of the goods for purposes of recovery by the shipper or those claiming under him. The court held that such a state law was void as to interstate shipments from the time of the enactment of the Carmack Amendment. The court said:

"Prior to that amendment, the rule of carriers' liability, for an interstate shipment of property, as enforced in both Federal and state courts, was either that of the general common law, as declared by this court and enforced in the Federal courts throughout the United States (citations), or that determined by the supposed public policy of a particular state (citations), or that prescribed by statute law of a particular state (citations).

"Neither uniformity of obligation nor of liability was possible until Congress should deal with the subject. The situation was well depicted by the supreme court of Georgia in *Southern P. Co.* v. *Cranshaw Bros.,* 5 Ga. App. 675, 63 S. E. 865."

"What this court said of the 22d section of this act of 1887 in the case of *Texas & P. R. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, 51 L. Ed. 553, 27 Sup. St. Rep. 350, 9 Sup. Ct. Rep. 1075, is applicable to this contention. It was claimed that that section continued in force all rights and remedies under the common law or other statutes. But this court said of that contention what must be said of the proviso in the twentieth section, that it was evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the Interstate Commerce Law or by state statute or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act. Again, it was said of the same clause, in the same case, that it could not in reason be construed as continuing in a shipper a common law

right the existence of which would be inconsistent with the provisions of the act. In other words, the act cannot be said to destroy itself.

In the case of *Chicago, B. & Q. R. Co.* v. *Miller,* decided by the supreme court of the United States on the same date as the *Croninger case,* reported in Vol. 33, No. 6, page 155, Supreme Court Reporter, the holding was to the same effect as in the *Croninger case,* and the court said:

"In *Adams Exp. Co.* v. *Croninger, supra,* we reached the conclusion that by the provisions of the seventh section of the latter act (of June 26, 1906), Congress had manifested a purpose to take possession of the subject of the liability of a carrier by railroad for interstate shipments, and that the regulations therein had superseded all state regulations upon the same subject." See, also, *Chicago, St. Paul, Minneapolis & Omaha R. Co.* v. *Latta,* 33 Sup. Ct. 166.

The decisions in the *Croninger, Miller* and *Latta cases* by the United States supreme court are decisive of the question here presented, and under those decisions section 4851 of the Code of Mississippi cannot be applied to the interstate shipments involved in this case.

In the case of *Orient Insurance Co.* v. *Daggs,* cited in *Yazoo & M. V. R. Co.* v. *Bent, supra,* there was no question of a regulation by a state of interstate commerce upon a subject which had been regulated by Congress.

For the reasons and under the United States supreme court decisions here stated, the judgment of the trial court should be reversed and judgment should be rendered by it in favor of the appellant.

*Claude Clayton,* for appellee.

Only one assignment of error is set forth by counsel for appellant by virtue of which the judgment of the lower court is sought to be avoided. This assignment of error, however, is subdivided into four distinct parts, so

I shall content myself with discussing this assignment. of error as if there were four distinct grounds for reversal claimed by counsel for appellant.

It is first contended that the court erred in not permitting the jury to pass upon the condition of the cotton at the time the bill of lading was issued. I do not think that this is any ground for reversing the judgment of the lower court, nor do I think that any of the grounds set. forth in the assignment of error are supported by meritorious reasoning, and therefore, will answer the argument adduced by counsel in the briefs filed in this cause.

Section 4851 of the Code of 1906 was incorporated therein from the Code of 1892. It is the law in this state today governing such transactions as the one embraced in this litigation, and has been the law for over twenty years, and is as follows:

"Every bill of lading, or other instrument in the nature or stead thereof, acknowledging the receipt of property for transportation, shall be conclusive evidence in the hands of a *bona fide* holder for value, whether by assignment, pledge, or otherwise, as against the person, or corporation, issuing the same, that the property has been so received."

It will be observed from the facts disclosed by the record that the shipper of this cotton paid the freight upon the actual number of pounds as set forth in the bill of lading. In other words, the carrier after issuing the bill of lading acknowledging the receipt of the shipment of the number of pounds as set forth in the bill of lading actually received the sum of seven hundred and fifty-five dollars and twenty-five cents for transporting this number of pounds of cotton. This statute has been construed by this court in such a way that in my opinion the appeal prosecuted by appellant is wholly unwarranted, and, it appears to me, done for the purpose of delay.

The case of *Lloyd* v. *Kansas City, Memphis & Birmingham Ry. Co.,* reported in 40 So. 1005 was the first case

decided by this court on the statute in question, in which the validity of the statute and its application was upheld by this court. In that case, as in this, it was contended that the railroad company, when it issued its bill of lading acknowledged the receipt of the cotton in question, did not weigh the same, yet that contention upon the part of the railroad company was not available to them. It might be conceded that, as a matter of fact, the appellant in this case never received the actual number of pounds of cotton as set forth in its bill of lading, yet, since it took upon itself the burden of accounting for this number of pounds of cotton by issuing its bill of lading and by acknowledging the receipt of the freight thereon, it cannot escape when a *bona fide* purchaser for value presents its claim for any deficit in the number of pounds of freight as set forth in its bill of lading.

In the latter case, this court has again construed this statute in the case of the *Yazoo & Mississippi Valley Railroad Company* v. *Bent*, 47 So. 805, in which not only the validity of the statute and its application was clearly and most completely analyzed, but also its constitutionality was passed on by the court in this case in which Chief Justice WHITFIELD specially concurred.

Under the authority of the two cases cited above, which passes upon the validity of this statute and its constitutionality in every phase discussed by counsel for appellant, I can see no reason why the opinion of the lower court should be reversed, therefore, I respectfully submit that we ask an affirmance in this cause.

Argued orally by *J. W. Buchanan* for appellant.

COOK, J., delivered the opinion of the court.

The appellant railroad company issued its bill of lading at Tupelo, Miss., to Thompson & Wallace, cotton buyers for three hundred bales of cotton, consigned to the Woodruff Mills at Woodruff, S. C. The bill of lading acknowledged the receipt of the three hundred bales, giv-

ing the weight and mark of each of the bales. Under the heading "Weight," in parenthesis, is printed "Subject to Correction." The freight was prepaid by the shippers, and the bill of lading, with draft attached for the sale price of the cotton, was sent through the bank. The draft was paid by the consignee, appellee. When the cotton was delivered, it was reweighed by appellee, showing a loss in weight, and this suit was filed for the value of the difference. The jury was instructed to find for the plaintiff for the amount declared for, and the verdict was accordingly so rendered.

There is an agreed statement of facts in the record, as follows: "It is agreed that the cotton involved in this suit is the cotton which was consigned by Thompson & Wallace to Woodruff Mills, at Woodruff, S. C., and that the Woodruff Mills received the identical cotton which was received by the defendant; that they received it within a reasonable time and in good condition."

Plaintiff below, appellee here, contended that section 4851, Code of 1906, controlled this bill of lading, and that the carrier could not be heard to question the recital that it received the number of pounds of cotton receipted for. Appellant contends that, since the adoption by Congress of the Carmack amendment to the interstate commerce act of February 4, 1887, section 4851 has no application to interstate shipments of freight.

In *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. —, the Supreme Court of the United States, referring to the Carmack amendment said: "That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take

possession of the subject, and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the state upon the subject of such contracts. But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist. [Citations.] To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the provision less than supreme, or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable, and the latter would be to revert to the uncertainties and diversities of ruling which led to the amendment. The duty to issue a bill of lading, and the liability thereby assumed, are covered in full; and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject. What is the liability imposed upon the carrier? It is a liability to any holder of the bill of lading which the primary carrier is required to issue 'for any loss, damage, or injury to such property caused by it.' " Following the Supreme Court of the United States, this court held that the Carmack amendment superseded all state statutes, policies and regulations. *Jones* v. *Express Co.,* 61 So. 165.

The construction given to the act of Congress by the Supreme Court of the United States is binding upon all state courts, and necessarily abrogates our statute so far as interstate shipments are concerned.

Appellee insists that the recitals of the bill of lading are prima facie correct, and this is true; but the agreement that the "identical cotton" received by the carrier was delivered to the consignee overcomes the presumption. If the "identical cotton" was delivered, certainly the carrier has performed its contract.

*Reversed, and judgment here for appellant.*