E. C. PIPER *v.* BOSTON & MAINE RAILROAD.

May Term, 1913, Reargued February Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed May 5, 1916.

*Carriers—Carriage of Goods—Limitation of Liability—Burden of Proof—Exemption from Liability for Negligence— Validity—Interstate Commerce—Federal or State Law— Rates and Schedules Filed Under Federal Law—Status— Carmack Amendment.*

Any valid limitation of liability made by the initial carrier inures to the benefit of the successive carriers in the chain of transportation. Congress has paramount authority over interstate commerce and any contracts and regulations regarding it, and when it acts, all local

laws and policies are superseded and its action becomes controlling; but if it omits to act, local laws and policies may apply.

Congress has so acted that it has taken over the whole subject-matter of a carrier's liability for loss or damage to interstate shipments, including any contracts respecting the carriage thereof, thereby superseding all special regulations, laws and policies of particular states in that regard.

By the common law a carrier may, by a fair, open, just and reasonable agreement, made for the purpose of obtaining the lower of two rates proportioned to the risk, limit the amount recoverable by the shipper for loss or damage to an agreed value, and the right to do so is not affected by the Federal Interstate Commerce Acts.

At common law the burden was on the carrier to show that its contract limiting the amount recoverable by shippers to an agreed value, was fair, open, just and reasonable, but the rates, schedules, and regulations, including the rate and limitation in the case of such agreed value, filed pursuant to the requirements of the federal statutes, have, so far as they are consistent with law, all the force and standing of federal enactments, and so long as they remain in force are conclusively presumed to be fair, open, just and reasonable, binding on the carrier and shipper alike, and must be enforced by the courts in all proceedings to establish the rights of the parties, nor does gross disproportion between the actual and agreed value affect the rule.

Under Carmack amendment to the Interstate Commerce Act, a carrier cannot make a valid agreement stipulating against liability for loss owing in whole or in part to its own negligence or that of its servants, though stipulations for an agreed value as the basis of the rate are not agreements for exemptions from negligence, and are given effect on the ground of estoppel.

A provision of a "uniform livestock contract," covering an interstate shipment of cattle, that they had been received by the carrier for itself and on behalf of connecting carriers for transportation subject to official tariffs and classifications, and upon the condition, admitted and accepted by the shipper to be just and reasonable, that upon any unusual delay caused by the negligence of the carrier or its connecting carriers, or otherwise, the shipper would accept as full compensation the amount actually expended by him for food and water for the stock while so detained, and reciting the shipper's acknowledgement that he had voluntarily decided to ship under that contract at a reduced freight rate, instead of at a

12

higher rate that would give the remedy against the company as a common carrier, was not a provision limiting recovery to an agreed valuation, but a provision exempting the carrier, in whole or in part, from liability for its own negligence, and so invalid.

CASE for negligent delay in the transportation of cattle. Plea, the general issue with notice. Trial by jury at the December Term, 1912, Addison County, *Miles,* J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case.

*W. B. C. Stickney* and *E. W. Lawrence* for the defendant.

*A. R. Sturtevant, J. B. Donoway* and *T. W. Moloney* for the plaintiff.

POWERS, J. The plaintiff shipped a carload of cows from Middlebury, Vt., to Union Market, in the State of Massachusetts. The Rutland Railroad hauled the car to Bellows Falls, where it turned it over to the defendant. Owing to the negligence of the latter, the shipment was unduly delayed and did not arrive at its destination until after the market had closed for the week, and the cows had to be kept over. This fact, together with the fact that they were unfavorably affected by the delay, caused the damage which the plaintiff seeks to recover in this action. The shipment was made under what is known as the "Uniform Live Stock Contract," which contains, among others, the following provisions: "The same has been received by said carrier for itself and on behalf of connecting carriers for transportation subject to official tariffs, classifications and rules of the said Company, and upon the following terms and conditions, which are admitted and accepted by the said shipper as just and reasonable. * * * * That in the event of any unusual delay or detention of said livestock caused by the negligence of said carriers or its employees or its connecting carriers or their employees, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby, the amount actually expended by said shipper in the purchase of food and water for said stock while so detained. * * * And E. G. Piper hereby acknowledges that he had the option of shipping the above described livestock at a higher rate of freight

according to the official tariffs, classifications and rules of the said carrier and connecting carriers, and thereby receiving the security of the liability of the said carrier and connecting railroad and transportation companies as common carriers of the said livestock on their respective roads and lines, but has voluntarily decided to ship same under this contract at the reduced rate of freight above first mentioned.''

It appeared that the tariffs in effect at the time of this shipment, both those of the defendant company and those of the Rutland, provided for a rate of $42 per car when shipment was made under the Uniform Livestock Contract, and a certain higher rate, otherwise; that these tariffs were duly filed, published, and posted agreeably to the requirements of the Acts of Congress; and that a part of said tariffs so filed, published and posted, known as the ''Official Classification No. 38,'' contained a copy of the Uniform Livestock Contract, together with the rules covering shipments thereunder, and otherwise.

The question presented is this: In the circumstances shown, is the limitation of liability above set forth legal and binding?

The fact that the contract was made with the Rutland and not with the defendant is of no consequence, since any valid limitation of liability made by the initial carrier inures to the benefit of the successive carriers in the chain of transportation. *Kansas City Southern Ry. Co.* v. *Carl*, 227 U. S. 639, 57 L. ed. 683, 33 Sup. Ct. 391; *Harrison Granite Co.* v. *Grand Trunk Ry. System*, (Mich.) 141 N. W. 642; *Cranor* v. *Southern Ry. Co.*, (Ga.) 78 S. E. 1014. The contract involved being for an interstate shipment, the laws of Congress and the decisions of the United States Supreme Court are, of course, so far as applicable, binding upon us. The paramount authority of Congress over the whole subject-matter of interstate carriage, and contracts and regulations regarding the same, is nowhere denied. If Congress omits action, room is left for the application of local laws and policies. *Chicago, M. & St. P. Ry. Co.* v. *Solan*, 169 U. S. 133, 42 L. ed. 688, 18 Sup. Ct. 289; *Penn. R. Co.* v. *Hughes*, 191 U. S. 477, 48 L. ed. 268, 24 Sup. Ct. 132. But once Congress acts, all such laws and policies are superseded and its action becomes controlling. *Adams Express Co.* v. *Croninger*, 226 U. S. 491, 57 L. ed. 314, 33 Sup. Ct. 148, 44 L. R. A. (N. S.) 257; *Chicago, B. & Q. Ry. Co.* v. *Miller*, 226 U. S. 513, 57 L. ed. 323, 33 Sup. Ct. 155; *St. Louis & S. F. R. Co.* v. *Woodruff Mills*,

(Miss.) 62 So. 171; *Missouri, K. & T. Ry. Co.* v. *Harris*, 234 U. S. 412, 58 L. ed. 1377, 34 Sup. Ct. 790, L. R. A. 1915 E, 942.

That Congress has acted and taken over the whole subject-matter in such a manner as to supersede all special regulations, laws and policies of particular states upon the subject of the carrier's liability for loss or damage to interstate shipments and contracts of carriage with respect thereto, is now established beyond question. *Adams Express Co.* v. *Croninger, supra; Chicago, B. & Q. R. Co.* v. *Miller, supra; Chicago, St. P. M. & O. R. Co.* v. *Latta*, 226 U. S. 519, 57 L. ed. 328, 33 Sup. Ct. 155; *Wells, F. & Co.* v. *Neiman-Marcus Co.*, 227 U. S. 469, 57 L. ed. 600, 33 Sup. Ct. 267; *Kansas City So. R. Co.* v. *Carl, supra; Missouri, K. & T. R. Co.* v. *Harriman*, 227 U. S. 657, 57 L. ed. 690, 33 Sup. Ct. 397; *Chicago, R. I. & P. R. Co.* v. *Cramer*, 232 U. S. 508, 490, 58 L. ed. 697, 34 Sup. Ct. 383; *Boston & M. R.* v. *Hooker*, 233 U. S. 97, 58 L. ed. 868, 34 Sup. Ct. 526, L. R. A. 1915 B, 450, Ann. Cas. 1915 D, 593; *Missouri, K. & T. R. Co.* v. *Harris, supra.*

It is, therefore, wholly unnecessary to inquire what the standing of the stipulation in question would be before our law, for it is to be tested solely by the Federal law.

By the common law as declared by the Federal Supreme Court, a carrier may, by a fair, open, just and reasonable agreement, limit the amount recoverable by a shipper, in case of loss or damage, to an agreed value made for the purpose of obtaining the lower of two or more rates proportioned to the risk. *Adams Express Co.* v. *Croninger, supra,* and cases cited. This right of an interstate carrier still exists, and is not forbidden or affected by the Interstate Commerce Acts. *Ib.; C. B. & Q. R. Co.* v. *Miller, supra; Missouri, K. & T. R. Co.* v. *Harriman, supra.*

At common law, the burden was on the carrier to show that the contract was fair, open, just and reasonable. *Cleveland, etc., Ry. Co.* v. *Blind,* (Ind.) 105 N. E. 483. Such, however, is not the law of this case. For here, the rates, schedules and regulations were prepared and filed agreeably to the requirements of the Federal statutes. They have, therefore, so far as they are consistent with the law, all the force and standing of Federal enactments. *Penn. R. Co.* v. *International Coal Mining Co.*, 230 U. S. 184, 57 L. ed. 1446, 33 Sup. Ct. 893, Ann. Cas. 1915 A, 315; *Nye* v. *Daniels*, 75 Vt. 81, 53 Atl. 150; *Taft* v. *Taft,* 82 Vt. 64, 71 Atl. 831; *State* v. *Peet*, 80 Vt. 449, 68 Atl.

661, 14 L. R. A. (N. S.) 677, 130 Am. St. Rep. 998. Provisions repugnant to the law, if any, do not, of course, have this standing. See *Interstate Com. Com.* v. *Un. Pac. R. Co.*, 222 U. S. 541, 56 L. ed. 308, 32 Sup. Ct. 108. Subject to this exception, so long as they remain in force, as to all their contents thus required and approved by law, they are conclusively presumed to be,—they *are*, in the eye of the law, fair, just and reasonable, and proof of this fact is not required. *Kansas City So. R. Co.* v. *Carl, supra; Missouri, K. & T. R. Co.* v. *Harriman, supra; Great Northern R. Co.* v. *O'Connor*, 232 U. S. 508, 58 L. ed. 703, 34 Sup. Ct. 380; *Chicago, R. I. & P. R. Co.* v. *Cramer, supra; Atchinson, T. & S. F. Ry. Co.* v. *Robinson*, 233 U. S. 173, 58 L. ed. 901, 34 Sup. Ct. 556; *Cleveland, C. C. & St. L. Ry. Co.* v. *Blind, supra; Wabash R. Co.* v. *Priddy*, (Ind.) 101 N. E. 724. "We are not concerned," says Mr. Justice Hughes in *Southern Ry. Co.* v. *Campbell*, 239 U. S. 99, 60 L. ed. 36 Sup. Ct. 33, a case involving tariff regulations relating to mileages filed with the Interstate Commerce Commission, "with the reasonableness of the rule; that, if challenged, would be a question for the Interstate Commerce Commission." The shipper may attack the rate or classification before the Commission, and, if either or both are found unreasonable, secure a modification thereof; but so long as they stand, they are binding on shipper and carrier alike, and must be enforced by the courts in all proceedings to establish the rights of the parties. *Geo. N. Pierce Co.* v. *Wells, Fargo & Co.*, 236 U. S. 278, 59 L. ed. 576, 35 Sup. Ct. 351. Both must take notice of and observe them, in the same way and to the same extent as would be required in the case of an Act of Congress, *Kansas City So. R. Co.* v. *Carl, supra; Cleveland, etc., Ry. Co.* v. *Hayes*, (Ind.) 102 N. E. 34, 103 N. E. 839, and no agreement for different rates or terms is binding. *Atchinson, T. & S. F. Ry. Co.* v. *Robinson, supra.* Nor does gross disproportion between the actual value and the stipulated value affect the rule. *Geo. N. Pierce Co.* v. *Wells, Fargo & Co., supra.*

So far, then, as the case before us depends upon the reasonableness of the provision in question, the argument of the defendant is sound, and if nothing more was involved the case would be with the defendant. But it is not now, any more than formerly, possible for a carrier to make a binding agreement stipulating against its own negligence or that of its servants.

Such agreements are prohibited by section 20 of the so-called Carmack Amendment. *Adams Express Co.* v. *Croninger, supra; Kansas City So. Ry. Co.* v. *Carl, supra; Bernard* v. *Adams Express Co.,* (Mass.) 91 N. E. 325, 28 L. R. A. (N. S.) 293, 18 Ann. Cas. 351; *Cook* v. *N. P. Ry. Co.,* (N. D.) 155 N. W. 867.

And an agreement to release a carrier from a part of the loss due to such negligence is no more valid than one making the exemption complete. *Kansas City So. Ry. Co.* v. *Carl, supra.* Stipulations for an agreed value, however, when made the basis of the rate, are not agreements for exemptions from negligence, and are given effect upon the ground of estoppel. *Ib.*

It thus appears that if the agreement before us is, in legal effect, a contract exempting the carrier, in whole or in part, from its negligence, it is repugnant to law and the fact that it is a part of the regulations filed with and approved by the Interstate Commerce Commission gives it no force or validity; it is wholly inoperative and void.

It is to be observed that it is not a provision limiting recovery to an agreed valuation; at least it is not such in form, and we think it is not such in essence. In form it is a stipulation against negligence; and we think that in legal effect it is such. The evidence tended to show that the unreasonable delay was due to the negligence of the company, and to give effect to the provision in question would be to excuse, in part if not wholly, this shortage of duty on the part of the carrier. As applied to the case made by the evidence it was an arbitrary preadjustment of the damages for a negligent delay of the shipment, and void. *Bosley* v. *B. & O. R. Co.,* (W. Va.) 46 S. E. 613, 66 L. R. A. 871; *Jennings* v. *Grand T. Ry.,* 52 Hun. 227, 5 N. Y. S. 140.

*Judgment affirmed.*