## H. P. Hudson, Appellant, v. Grand Rapids & Indiana Railway Company, Appellee.

### Gen. No. 21,732.

1. CARRIERS, § 241*—*when failure of shipper of interstate car of live stock to present claim for damages within time limited is bar to recovery.* Where a contract for interstate shipment of live stock provided that no claim for damages should be allowed or sued for unless the shipper should make and deliver same to the railroad company's general agent within five days after removal of the stock from the car, *held* that a failure to give such notice or to show a waiver thereof barred an action on such claim.

2. EVIDENCE, § 304*—*when sufficient to show mailing and receipt of letter.* Evidence that a letter was mailed in a government chute with a two-cent stamp on the envelope addressed to a certain party, and that such party acknowledged its receipt, *held* sufficient to warrant a finding that such letter was mailed and received by such party, although the testimony that the letter was "mailed" may have been a statement of a conclusion, no objection being made thereto.

3. CARRIERS—*what law governs rights and duties of interstate carriers.* The rights and duties of interstate carriers are governed by the common law except in so far as they may have been changed or modified by an act of Congress or by acts of the Interstate Commerce Commission within the scope of the authority delegated to it in regard to interstate commerce.

4. CARRIERS, § 33a*—*what does not constitute an approval of clause limiting liability for loss in bill of lading by Interstate Com-*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*merce Commission.* The filing with the Interstate Commerce Commission of a tariff schedule and the publication of the rates in accordance with its regulations do not constitute an approval by that Commission of a clause in a bill of lading attempting to limit the carrier's liability for a loss.

5. CARRIERS, § 113*—*what is extent of liability of carriers for loss or damage to goods at common law.* At common law carriers in addition to their liability for negligence were absolutely liable for loss of or damage to goods intrusted to them unless it occurred as the result of an act of God or the public enemies.

6. CARRIERS, § 243*—*when provision in bill of lading for interstate shipment of live stock limiting liability for negligent delay is invalid.* The rule of public policy which prevents a carrier from securing a release from liability for its own negligence equally prevents it from obtaining a stipulation for its release from liability as to any part of the damage, and a stipulation in a bill of lading for an interstate shipment of live stock, that in event of unusual delay or detention due to the negligence of the carrier or its employees, or otherwise, the shipper will accept as full compensation for all loss or damages sustained thereby the amount actually expended by the shipper in the purchase of food and water for the stock while so detained, is invalid.

Appeal from the County Court of Cook county; the Hon. J. J. COOKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1916. Reversed and remanded. Opinion filed February 7, 1917. Rehearing denied February 20, 1917.

CHARLES A. BUTLER, for appellant.

WINSTON, PAYNE, STRAWN & SHAW and LOESCH, SCOFIELD & LOESCH, for appellee.

MR. JUSTICE GOODWIN delivered the opinion of the court.

The appellant, who will be referred to as the plaintiff, seeks to reverse a judgment against him in favor of the appellee, who will be referred to as the defendant. The evidence shows that the plaintiff made two shipments of cattle to be carried from Wayland, Michigan, to the stockyards at Chicago, Illinois; there was

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a delay in each shipment which caused a shrinkage in the weight of the cattle and a further loss by reason of a falling market. There was no evidence that any claim was made in connection with the first shipment within five days, in accordance with the provisions in the bill of lading "that no claim for damages which may accrue to the said shipper under this contract shall be allowed or paid by the said carrier, or sued for in any court by the said shipper, unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to the G. T. freight agent of the said carrier at his office in Chicago, Ill., within five days from the time said stock is removed from said car or cars, and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like manner, and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs." Nor was there any evidence tending to show a waiver of such notice. There was, however, evidence that notice of claim was mailed to the freight agent of the connecting carrier in apt time, and also a stipulation that witnesses called and sworn on behalf of the plaintiff would testify that on January 26, 1914, a letter was addressed and mailed in a government chute, with a two-cent stamp on the envelope, addressed to F. C. Nicholas, local freight agent of the Michigan Central Railroad, Chicago, Illinois, in which a claim was filed in connection with the shipment of January 24, 1914, and that he acknowledged it in due course of mail, January 29, 1914. This stipulation obviously refers to the shipment of January 20, which was unloaded January 21st, at five-thirty p. m. The bill of lading or livestock contract also, in addition to the usual stipulations in regard to the value of the cattle, provided "that in the event of any unusual delay or detention

380      Appellate Courts of Illinois.

Hudson v. Grand Rapids & Indiana Ry. Co., 203 Ill. App. 377.

of said live stock, caused by the negligence of the said carrier, or its employees, or its connecting carriers, or their employees, or otherwise, the said shipper agrees to accept as full compensation for all loss or damage sustained thereby, the amount actually expended by said shipper, in the purchase of food and water for the said stock, while so detained.'' It was further stipulated that the defendant had published and filed with the Interstate Commerce Commission its classifications, tariffs, and schedules of freight rates from Wayland, Michigan, to Chicago, Illinois, wherein were promulgated two rates of freight—one of which applied only where the live-stock contract in evidence here was used, and the other, or higher rate, where it was not used, and that plaintiff paid the lower rate. At the close of the evidence, the court instructed the jury to find for the defendant, and entered judgment on the verdict so directed. This action of the court is relied upon as error.

We are clearly of the opinion that as the evidence fails to show notice or waiver of notice of any, claim in connection with the first shipment, plaintiff is, under the uniform rulings of the State and Federal courts, debarred from recovering any damages in connection with that shipment. We think it is clear, however, that the evidence and the stipulation were sufficient to entitle a jury to conclude that proper notice had been mailed and received in regard to the claim made in connection with the second shipment. Plaintiff expressly testified that he mailed the letter in question January 23rd. To say that one mailed a letter may be a conclusion, but, if so, it was not objected to. As there was no, evidence showing any expenditure in feeding and watering the stock, the question squarely arises as to whether the stipulation in the contract in regard to the measure of damages growing out of negligence or delay debars other recovery therefor; in

other words, as to whether that provision in the live-stock contract is valid and binding.  As this question has not been passed upon by any Federal court of review, it is one of first impression, except in so far as the decisions of other State courts may be persuasive.

In the first place, it is apparent that the rights and duties of interstate carriers are governed by the common law, except in so far as they may have been changed or modified by act of Congress or by acts of the Interstate Commerce Commission, within the scope of authority delegated to it in regard to interstate commerce.  We are of the opinion that the filing of the schedules with the Interstate Commerce Commission, and the publication of the rates in accordance with its regulations, as shown by the stipulation, did not constitute an approval by the Interstate Commerce Commission of the clauses in the bill of lading attempting to limit the carrier's liability.  No act of Congress or other act of the Commission is cited which in any way touches upon the validity of the stipulation.  Common carriers, under the common law, in addition to their liability for negligence, were absolutely liable for loss of, or damage to, the goods intrusted to them, unless it occurred as the result of an act of God or the public enemies.  They could, however, by contract relieve themselves of this absolute liability, but it is well settled "that it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants."  (*New York Cent. R. Co. v. Lockwood,* 17 Wall. (U. S.) 357, at page 384.)  But as the carrier's reasonable compensation depended, in a measure, upon the value of the goods shipped, it was held that where a shipper obtained a lower rate by representing that the value of the goods did not exceed a certain amount, he was thereafter

estopped from claiming a right to recover a sum larger than the value declared. (*Hart v. Pennsylvania R. Co.*, 112 U. S. 331.) The case at bar, however, in no way falls within that principle, for here, the stipulation in the uniform shipping contract is plainly to the effect that the carrier shall not be liable for a part, at least, of the damages which flow from its own negligence. We are of the opinion that the rule of public policy which prevents a carrier from securing a release from liability for damages growing out of its own negligence equally prevents it from obtaining a stipulation for its release from liability as to any part of those damages. If it could lawfully stipulate against any damages arising out of its negligent delay, except for feed and water, it could, in the same manner, stipulate that it should be liable only for the cost of watering the stock, or that it should not be liable for any sum exceeding $1. If it is contrary to public policy to permit a carrier to relieve itself of its liability for its negligence, it is equally contrary to public policy to permit it to relieve itself of its liability for any part of the damages arising therefrom. The identical point was passed upon by the Supreme Court of Vermont, in *Piper v. Boston & M. R. R.*, 97 Atl. 508, where the court said, at page 511:

"But it is not now, any more than formerly, possible for a carrier to make a binding agreement, stipulating against its own negligence or that of its servants. Such agreements are prohibited by section 20 of the so-called Carmack Amendment. * * * And an agreement to release a carrier from a part of the loss due to such negligence is no more valid than one making the exemption complete."

The same question was before the Supreme Court of Appeals of Virginia, in *Norfolk & W. Ry. Co. v. A. J. Steele & Son*, 86 S. E. 124, where the court, after quoting the clause in the bill of lading in question here, said, page 126:

"The extra feed and water bill in this case amounted to about $20, and furnishes a very good illustration of how completely this clause might operate to exempt carriers from liability, if its validity can be sustained."

We are therefore of the opinion that the stipulation limiting the defendant's liability for negligent delay to the cost of feeding and watering the stock is invalid, and that, consequently the action of the court in directing a verdict was erroneous. The judgment is reversed and the cause remanded to the County Court.

*Reversed and remanded.*