COMMONWEALTH *vs.* FRED H. HYDE.

Essex.    February 6, 1918. — February * 7, 1918.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*State Board of Health. Water Supply,* Protection of. *Haverhill. Crystal Lake.*

Under R. L. c. 75, § 113, as amended by St. 1907, c. 467, § 1, which empowers the State board of health to "make rules and regulations to prevent the pollution and to secure the sanitary protection, of all such waters as are used as sources of water supply" and to "delegate the granting and withholding of any permit required by such rules or regulations to . . . water boards and water commissioners in cities and towns," a rule of the State board of health, that "No person shall . . . , unless permitted by a written permit of the board of water commissioners of the city of Haverhill, fish in . . . Crystal Lake . . . , so called, in the city of Haverhill . . . , said lakes . . . being used by said city as sources of water supply," is valid and enforceable.

COMPLAINT, received and sworn to in the Central District Court of Northern Essex on January 3, 1917, charging that the defendant on January 2, 1917, " did then and there go upon the ice of Crystal Lake, so called, in Haverhill, and did fish in said lake, without a permit to do so of the board of water commissioners of the said city of Haverhill, in violation of the rules and regulations of the State board of health of the said Commonwealth."

In the Superior Court the case was tried before *Dubuque,* J.,

---

* This case was printed out of order by mistake as if the rescript had been dated March 7, 1918, instead of February 7, 1918.

on an agreed statement of facts. Upon the agreed statement of facts the judge instructed the jury, subject to the defendant's exception, that they would be warranted in returning a verdict of guilty. Thereupon the jury returned such a verdict, and the judge, being of opinion the question raised by the defendant's exception ought to be determined by this court, reported the case for such determination.

R. L. c. 75, § 113, as amended by St. 1907, c. 467, § 1, is as follows: "Said board may cause examinations of such waters to be made to ascertain their purity and fitness for domestic use or their liability to impair the interests of the public or of persons lawfully using them or to imperil the public health. It may make rules and regulations to prevent the pollution and to secure the sanitary protection, of all such waters as are used as sources of water supply. Said board may delegate the granting and withholding of any permit required by such rules or regulations to State boards and commissions and to selectmen in towns and to boards of health, water boards and water commissioners in cities and towns, to be exercised by such selectmen, boards and commissions, subject to such recommendation and direction as shall be given from time to time by the State board of health; and upon complaint of any person interested said board shall investigate the granting or withholding of any such permit and make such orders relative thereto as it may deem necessary for the protection of the public health."

The case was submitted on briefs.

*H. C. Thompson,* for the defendant.

*L. S. Cox,* District Attorney, for the Commonwealth.

RUGG, C. J. This is a complaint charging the defendant with going upon the ice of Crystal Lake and fishing therein without a written permit of the water commissioners of the city of Haverhill, in violation of rules and regulations of the State board of health. The pertinent part of the regulation of the State board of health is as follows: "No person shall . . . , unless permitted by a written permit of the board of water commissioners of the city of Haverhill, fish in . . . Crystal Lake . . . , so called, in the city of Haverhill . . . , said lakes . . . being used by said city as sources of water supply."

The regulation was passed pursuant to R. L. c. 75, § 113, as

amended by St. 1907, c. 467, § 1, which empowers the State board of health to "make rules and regulations to prevent the pollution and to secure the sanitary protection, of all such waters as are used as sources of water supply," with power to delegate the granting or withholding of permits to water commissioners, subject to investigation and revision by way of appeal to the board itself.

The delegation by the Legislature of the right to make rules and regulations is within its power. *Commonwealth* v. *Sisson,* 189 Mass. 247. *Commonwealth* v. *Kingsbury,* 199 Mass. 542. The case at bar thus is distinguished from *Commonwealth* v. *Staples,* 191 Mass. 384, where no power of delegation was conferred by the statute there under consideration. The power of revising the conduct of the water commissioners reserved to the State board of health by the statute avoids the difficulty of vesting an untrammelled discretion in a subordinate board or officer, which was held fatal to the ordinance before the court in *Commonwealth* v. *Maletsky,* 203 Mass. 241. *Goldstein* v. *Conner,* 212 Mass. 57. *Stevens, landowner,* 228 Mass. 368.

The regulation passed by the State board of health, in pursuance of the statutory authority, prohibiting fishing upon a body of water used as source of water supply for a municipality, cannot be pronounced unreasonable. It requires no discussion to demonstrate that the preservation of the purity of the water supply for the domestic uses of the people is within the police power. The absolute prohibition of fishing upon such a source of supply could not be said to be unreasonable under the circumstances here disclosed. It is not irrational for a public board to deem it likely or possible that sources of contamination and germs of disease might have a causal connection with the presence of fishermen upon the ice or waters of a supply of drinking water. *Nelson* v. *State Board of Health,* 186 Mass. 330. *Sprague* v. *Minor,* 195 Mass. 581. The case of *Austin* v. *Murray,* 16 Pick. 121, upon which the defendant relies, is quite distinguishable.

*Exceptions overruled.*