TOWN OF WATERBURY *v.* CENTRAL VERMONT RAILWAY COMPANY.

May Term, 1919.

Present:  WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed October 9, 1919.

*Railroads—G. L. 5168—Duty to Repair Highway Bridge—Jurisdictional Facts Implied from Facts Expressly Found—Constitutional Law—All Contracts and Charters Subject to Police Power—Power of Legislature to Bind Its Successor.*

Under G. L. 5168, providing that a railroad whose track crosses the traveled path of a highway shall repair and rebuild bridges and other constructions made for the accommodation, safety, and convenience of the public travel, a railroad is required to keep in repair a highway bridge forming a part of the highway at the point where it is crossed by the railroad's overpass.

While, on an appeal from an order of the Public Service Commission,

all necessary jurisdictional facts must be shown by the record, it is not necessary that they appear by express findings, but it is sufficient if they appear by necessary implication from the facts expressly found.

That a bridge was built and used for the safety and convenience of public travel on a highway at a point where the highway is crossed by a railroad's overpass, affirmatively appears from the findings that the bridge is directly under the overpass; that there is a highway there; and the bridge is spoken of as a "highway bridge."

Every contract made, and every charter granted, regardless of its stipulations, is subject to the police power of the State of which the Legislature cannot divest itself; nor can one Legislature bind its successor by any contract to the contrary.

G. L. 5168, having been passed in the exercise of the police power, a railroad is subject to its provisions, although its original charter granted prior thereto prescribed the terms and conditions on which it could cross a public highway, and contained no reservation of legislative authority to alter, amend, or repeal it.

APPEAL by the petitionee from an order of the Public Service Commission directing it to repair a certain highway bridge in the town of Waterbury, Washington County. The opinion states the case.

*John W. Redmond* and *W. R. McFeeters* for the petitionee.

*Charles B. Adams* for the petitioner.

POWERS, J. The track of the defendant's railroad crosses Main Street in the village of Waterbury by means of an overpass. Directly under this overpass is an iron bridge forming a part of the highway at that point. This bridge, as well as a wooden structure that preceded it, was built and has always been maintained by the town of Waterbury. It has now become unsafe for public travel and must be repaired or replaced. The town is seeking to charge the defendant with the expense of this undertaking; and, proceeding under G. L. 5170, it gave the defendant notice of the condition of the bridge, and the latter having failed to repair the same within the time limited by the statute, it brought this petition to the Public Service Commission, and has obtained an order requiring the defendant to make

such repairs upon the bridge as will make it safe for public travel and hereafter to keep the same in proper repair. From this order the defendant appeals.

G. L. 5168 provides that a railroad corporation whose track crosses a highway by passing upon, over, or under the traveled path thereof shall repair, and rebuild when necessary, bridges, culverts, crossings, and other constructions made for the accommodation, safety, and convenience of the public travel on such highway. It is contended by the defendant that this statute is not to be taken literally, but means merely that the corporation is to keep in repair such portions of the highway and such structures as it has added, changed, or interfered with.

This contention cannot be sustained. The statute under consideration originated in No. 26, Acts of 1852, wherein it was provided that in all cases where a railroad built its road across a highway or street, and should "find it necessary to erect a bridge or embankment for the accommodation of such highway or street," it should keep and maintain such bridge or embankment in good and sufficient repair for highway purposes, unless it completed such crossing to the acceptance of the selectmen or railroad commissioners, agreeably to its charter. Under such a statute, the claim of the defendant might well be made. For the language used clearly implies that the responsibility of the railroad company was limited to such constructions as were made necessary by the building of the railroad. But in 1855 another act was passed by the Legislature. This provided that "When any railroad corporation in this State shall have constructed a railroad across any public highway, either by passing upon, over, or under the traveled path of such highway, such corporation shall at all times keep in good and sufficient repair, and rebuild when necessary, all bridges, culverts, crossings, and other constructions which have been or shall hereafter be made for the accommodation, safety, and convenience of public travel on such highway, over, under, or upon such highway." No. 28, Acts of 1855. It is apparent that this act materially extended the obligation of railroad companies to which it applied and carried it far beyond its limits under the act of 1852. For some reason (not at the moment apparent) the act of 1855 was not treated as amendatory of the act previously passed, and both of the acts were carried into the General Statutes, where they appear as sections 38 and 40, of chapter 28. But whether the act of 1855

is to be regarded as an amendment or otherwise, the result is the same: It must be taken that the Legislature intended thereby to make some change in the statute as it then stood.    The only change that could have been contemplated, as clearly appears from the terms used, was an enlargement of the duties of railroad companies that built railroads across public highways.    The editors of the Revised Laws, with the sanction of the Legislature, of course, treated the act of 1855 as an amendment of the previous act and as expressing all the law of the subject.    They discarded the act of 1852 and kept only the act of 1855.    R. L. 3383.    And without material change the law stands the same to-day.    G. L. 5168.    In view of its plain terms, considered in the light of its legislative history, we have no hesitation in holding that the law requires this defendant to maintain the bridge in question.

The defendant urges that the order is not predicated upon adequate findings of jurisdictional facts, in that it is not shown that the bridge was made for the accommodation, safety, or convenience of public travel on the highway.    That all necessary jurisdictional facts must be shown by the record is beyond question.    *Besette* v. *Goddard*, 87 Vt. 77, 88 Atl. 1.    But it is not necessary that they appear by express findings.    It is enough if they appear by necessary implication from the facts expressly found.    Such is the case here.    The findings show that there is a bridge directly under the overpass; that there is a highway there; the bridge is spoken of as a "highway bridge."    The term "bridge" is defined to be a structure erected over a river, creek, stream, ditch, ravine, or other place to facilitate the passage thereof.    1 Bouvier, (Rawle's 3d Rev.) 395.    A "highway bridge" then must be such a structure forming a part of a highway erected to facilitate the passage over a stream, ravine, or some such thing.    From the findings specified it sufficiently and affirmatively appears that this bridge was built and used for the safety and convenience of public travel on the highway there.

Certain findings are challenged for want of evidence, but we do not regard them as necessary to the validity of the order; therefore we take no time in their discussion.

It is urged by the defendant that the statute referred to does not apply to it, and that to hold otherwise would be to deprive it of vested rights.    In support of this proposition it is claimed that the original charter of the defendant is to be found in No.

53, Acts of 1843; that section 10 of that act prescribes the terms and conditions on which the corporation could build its road across a public highway; that that act contains no reservation of legislative power to alter, amend, or repeal the same; and it is argued that to apply the statute to the defendant would amount to amending its charter in violation of the contract clause of the Federal Constitution. Assuming that the record before us is sufficient to show that the defendant is now vested with "the same franchises, privileges, and immunities" contained in the act of 1843, the contention is unsound; for, there is nothing in the law more firmly established than this: Every contract made, every charter granted, regardless of its stipulations, is subject to the police power of the State. The Legislature cannot divest itself of the power (which carries with it the corresponding duty) of conserving the health, safety, comfort, and welfare of the people; nor can one Legislature bind its successor by any contract to the contrary. *Thorpe* v. *Rutland & Burlington R. Co.*, 27 Vt. 140, 62 Am. Dec. 625; *Clarendon* v. *Rutland R. Co.*, 75 Vt. 6, 52 Atl. 1057; *Boston & Maine R. R.* v. *County Com'rs,* 79 Me. 386, 10 Atl. 113; *Texas & New Orleans R. Co.* v. *Miller,* 221 U. S. 408, 55 L. ed. 789, 31 Sup. Ct. 534; *Atlantic Coast Line R. Co.* v. *Goldsboro,* 232 U. S. 548, 58 L. ed. 721, 34 Sup. Ct. 364; *Boston Beer Co.* v. *Mass.,* 97 U. S. 25, 24 L. ed. 989. That the passage of the statute in question was an exercise of the police power is beyond question. Its evident purpose was to safeguard the traveling public by a unified responsibility for and control of all things within its right of way at highway crossings. *Boston & Maine R. R.* v. *County Com'rs, supra.* This very case shows the importance of such control. The abutment of the overpass and the abutment of the highway bridge are one and the same structure. A proper regard for the safety of the traveling public demands that it should be free from independent and possibly antagonistic authorities.

Our own cases above cited are decisive against the defendant on this point.

*Order affirmed, and cause remanded for such further proceedings as may be required not inconsistent with the views herein expressed.*