STATE *v.* JOSEPH QUATTROPANI.

November Term, 1925.

Present:    WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 5, 1926.

*Health—Power of Board of Health Under G. L. 6313 to Prevent Contamination of Water Supply—Status of Orders of State Board of Health—Constitutional Law—"Police Power" Defined—Scope of Police Power—Presumption as to Validity of Order of State Board of Health—Ownership of Waters of Public Pond and of Land Beneath Them—Eminent Domain—Order of State Board of Health to Prevent Contamination of Water Supply—Validity of Order Not Dependent on Prohibited Act Doing Actual Harm.*

1.  Under G. L. 6313, authorizing State Board of Health to make rules and regulations to prevent the pollution and to secure the sanitary protection of waters, streams, and ponds used as a source of water supply, such board acts summarily, and no notice of board's order prohibiting boating on pond constituting city's water supply was necessary to sustain conviction for violating such order, other than its publication as provided by G. L. 6314, and respondent's ignorance of such order did not affect his situation.

2.  Orders of State Board of Health, made under statutory authority and in conformity with law, have all the force and effect of legislative enactments.

3.  The police power in its broadest significance is but another name for sovereignty, but in its narrower sense it signifies governmental power of conserving and safeguarding the public safety, health, and welfare.

4.  All contracts entered into, all charters granted, all rights possessed, and all property held are subject to proper exercise of police power, and must submit to its valid regulations and restrictions, but its scope is not unlimited, and validity of any mandate promulgated under it, and its character, whether valid or otherwise, is for judicial determination, while necessity and propriety of mandate are for Legislature or its delegate.

5. Order of State Board of Health, prohibiting boating on pond, "boatable" within meaning of term as used in Constitution, Ch. II, § 63, and constituting source of city's water supply, is presumptively valid, and must be enforced unless it is made manifest that it has no just relation to protection of public health, or that it is a plain invasion of constitutional rights.

6. Where pond is public, waters thereof and land beneath them belong to the people in their sovereign character, and are held for the public uses for which they are adapted, riparian owner having only privileges incidental to ownership of riparian land.

7. Valid exercise of police power does not amount to taking of property by eminent domain, and compensation is not required, though property values are impaired.

8. Order of State Board of Health, under G. L. 6313, prohibiting boating on "boatable" pond constituting source of city's water supply, *held* not unreasonable and arbitrary, but a valid exercise of police power.

9. To sustain validity of such order, it is not necessary that prohibited act should do actual harm, but it is sufficient if, in the circumstances, it is reasonable to apprehend that act may result, directly or indirectly, in contamination of the water.

INFORMATION for boating on Berlin Pond in violation of an order of State Board of Health. Trial by jury in the city court of Barre, *H. William Scott*, City Judge. Verdict of guilty, and respondent fined. The respondent excepted. The opinion states the case. *Affirmed.*

*John W. Gordon* for the respondent.

*Charles B. Adams*, State's attorney, and *Webster E. Miller* for the State.

POWERS, J. Assuming to act under the authority conferred by Chapter 271 of the General Laws, the State Board of Health made and promulgated an order prohibiting boating on Berlin Pond, which is the source of the water supply of the city of Montpelier. The respondent violated this order, and was prosecuted therefor in the city court of Barre, wherein he was convicted and fined. He brings the case here on a bill of excep-

tions which presents several questions, the most important of which challenges the validity of the order on constitutional grounds.

[1, 2]    The respondent treats the order as having been made under G. L. 6317, and insists that it is void for want of notice to him. But we take no time with this, as it is quite apparent that the order is made under G. L. 6313, which provides that the board "may make rules and regulations to prevent the pollution and to secure the sanitary protection of" waters, streams, and ponds used as a source of public water supply. Under this section, the board acts summarily, and the respondent was entitled to no notice other than the publication of the order as provided for in G. L. 6314, which was proved. 12 R. C. L. 1274; *State* v. *Morse,* 84 Vt. 387, 80 Atl. 189, 34 L. R. A. (N. S.) 190 Ann. Cas. 1913B, 218.

That the public health is a proper subject for police power protection, and that that power can lawfully be delegated to the State Board of Health, are both unquestioned and unquestionable. And it is not to be forgotten that its orders, when made under statutory authority and in conformity with the law, have all the force and effect of legislative enactments. *Piper* v. *Boston & Maine Railroad,* 90 Vt. 176, 97 Atl. 508, and cases cited.

A notice to the respondent in advance of this order was no more required than such a notice would have been if the provisions of the order had been embodied in a special act of the Legislature. In either case, he would be entitled to such notice, if any, as the statute required, and none other. His ignorance of the order, if shown, would not affect his situation. *State* v. *Morse, supra.*

It is agreed that Berlin Pond is "boatable" within the meaning of that term as used in our Constitution, Ch. II, § 63. It appeared at the trial that the respondent did, in fact, boat upon the pond, but did nothing that would in any way pollute it or its outlet, from which the city takes its supply.

The respondent stoutly maintains that the order in question exceeds the limits of a valid exercise of the police power, in that it invades the right of private ownership and violates constitutional guaranties.

[3-5] The police power in its broadest significance is but another name for sovereignty, itself. *In re Guerra,* 94 Vt. 1, 110 Atl. 224, 10 A. L. R. 1560. In its narrower sense, as here

exercised, it signifies the governmental power of conserving and safeguarding the public safety, health, and welfare. In this sense, it covers a very wide field of operation. All contracts entered into, all charters granted, all rights possessed, and all property held, are subject to its proper exercise, and must submit to its valid regulations and restrictions. *Waterbury* v. *Central Vermont Ry. Co.*, 93 Vt. 461, 108 Atl. 423; *State* v. *Speyer*, 67 Vt. 502, 32 Atl. 476, 29 L. R. A. 573, 48 A. S. R. 832; *State* v. *Morse, supra.* Its scope, however, is not unlimited, and the validity of any mandate promulgated under it is for judicial determination. *State* v. *Morse, supra; State* v. *Haskell*, 84 Vt. 429, 79 Atl. 852, 34 L. R. A. (N. S.) 286. The necessity and propriety of the mandate are for the Legislature or its delegate; its character, whether valid or otherwise is for the court. *State* v. *Speyer, supra.* This order is presumptively valid (*State* v. *Morse, supra*), and it must be enforced unless it is made manifest that it has no just relation to public health protection, or that it is a plain, palpable invasion of constitutional rights. *Board of Health* v. *St. Johnsbury*, 82 Vt. 276, 73 Atl. 581, 23 L. R. A. (N. S.) 766, 18 Ann. Cas. 496; *Purity Extract & T. Co.* v. *Lynch*, 226 U. S. 192, 57 L. ed. 184, 33 Sup. Ct. 44. If either of these infirmities appear, it is our duty to declare its invalidity.

[6, 7]   Berlin Pond being public, the respondent has no ownership of its waters or the land beneath them; these belong to the people in their sovereign character, and are held for the public uses for which they are adapted. *Hazen* v. *Perkins*, 92 Vt. 414, 105 Atl. 249, 23 A. L. R. 748. All he has is certain privileges incidental to his ownership of riparian land. *State* v. *Morse, supra.* That these are valuable and, in law, are property may be conceded; but this is not determinative of the validity of this order. A valid exercise of the police power does not amount to a taking of property as by eminent domain, and compensation is not required, though property values are impaired. *Aitken* v. *Wells River*, 70 Vt. 308, 40 Atl. 829, 41 L. R. A. 566, 67 A. S. R. 672; *State* v. *Morse, supra; Mugler* v. *Kansas*, 123 U. S. 623, 31 L. ed. 205, 8 Sup. Ct. 273; *Calhoun* v. *Massie*, 253 U. S. 170, 64 L. ed. 843, 40 Sup. Ct. 474. The case first cited affords a notable application of this rule. Therein, to protect the public highway during a freshet, village authorities burned the plaintiff's mill and blew up his dam, for which he sued. But this

Court held that there was no liability, because the destruction of the property was, in the circumstances, a valid exercise of the police power, and not of eminent domain.

[8]    We cannot say that as matter of law this order was unreasonable and arbitrary.    We are aware that cases are to be found in which similar orders have been condemned, but we see no reason for departing from a policy fully established by our decisions of approving a generously free exercise of the power to safeguard the health of the public.    In sustaining such regulations as the one before us, we are sufficiently supported by the decisions.

In *Com.* v. *Hyde,* 230 Mass. 6, 118 N. E. 643, a regulation of the State Board of Health providing that no person, unless by written permit, should fish in the waters of Crystal Lake, from which the city of Haverill took its water supply, was held to be a reasonable health regulation.    "The regulation," says Chief Justice Rugg, "passed by the State Board of Health, in pursuance of statutory authority prohibiting fishing upon a body of water used as a source of water supply for a municipality, cannot be pronounced unreasonable.    It requires no discussion to demonstrate that the preservation of the purity of the water supply for the domestic uses of the people is within the police power.    The absolute prohibition of fishing upon such a source of supply could not be said to be unreasonable under the circumstances here disclosed."

*Sprague* v. *Minon,* 195 Mass. 581, 81 N. E. 284, is even more in point.    There, the inhabitants of the metropolitan water district had appropriated the waters of Lake Chocituate, a "great pond" under their law, for domestic use; and the metropolitan water board, under statutory authority to "secure and protect the purity of said water," promulgated an order prohibiting boating thereon.    The defendant violated this order, and the board instituted the suit to enforce it.    It was held that the order was valid as a measure to promote the safe and advantageous use of the water for drinking purposes, and that it was not open to the defendant to show that it was unnecessary or that boating on the lake did no harm.

The pertinence of Massachusetts cases is the more apparent when we remember that under her "Body of Liberties" adopted about 1647, the "great ponds" of that state—those containing more than ten acres—are not subject to private ownership, but

are appropriated to the public and are held much as our "boatable waters" are, for such public uses as they may be made to serve. *Atty. General* v. *Herrick,* 190 Mass. 307, 76 N. E. 1045.

*Dunham* v. *New Britain,* 55 Conn. 378, 11 Atl. 354, is much stronger for the plaintiff therein than this case is for the respondent. There, lands for a water system were conveyed to the city's predecessor by absolute deeds, but upon the consideration, expressed in a separate writing, that the grantors should have the right to use the waters of the reservoir to be constructed for boating and fishing. Pursuant thereto, the plaintiff, who succeeded to the rights of the grantors, established on the shore of the reservoir, a pleasure resort, where he built up a profitable business renting boats. Afterwards, the city, acting under statutory power, passed an ordinance prohibiting boating on the reservoir. The court held that the ordinance was a valid exercise of the police power; that the ordinance was adapted to the object of preserving the public health; that though the use of the waters for boating was not of itself injurious, as an incident to such use, objectionable matter might find its way into the water and tend to impair its purity and endanger its use.

[9] As is shown by *State* v. *Morse, supra,* wherein we upheld an order prohibiting bathing in this same pond, it is not necessary to the validity of an order of this kind that the prohibited act should do actual harm. It is enough if, in the circumstances, it is reasonable to apprehend that the act may result, directly or indirectly, in the contamination of the water.

The language of Mr. Justice Hughes in *Purity Extract & T. Co.* v. *Lynch,* 226 U. S. 192, 57 L. ed. 184, 33 Sup. Ct. 44, quoted, in part, in *Ruppert* v. *Caffey,* 251 U. S. 264, 64 L. ed. 260, 40 Sup. Ct. 141, is directly applicable here: "It is also well established that, when a state exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having a reasonable relation to that end, as it may deem necessary in order to make its action effective. It does not follow that because a transaction, separately considered, is innocuous, it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government. (Citing cases.) With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial

relation to a proper purpose, it cannot be said that the limit of legislative power has been transcended.''

It does not ''clearly appear'' that this order does not bear a reasonable relation to the end sought. While the danger of contamination is not quite so plain as it was in the Morse case, we are satisfied of its presence, and that boating on this pond, however harmless it of itself may be, would give rise to a reasonable apprehension that such use might involve mingling with the water foreign matter that would tend to render it unfit for drinking purposes. To quote again from *Com.* v. *Hyde, supra,* ''It is not irrational for a public board to deem it likely or possible that sources of contamination and germs of disease might have a causal connection with the presence of fishermen upon the ice or waters of a supply of drinking water.''

*Judgment that there is no error in the proceedings and that the respondent takes nothing by his exceptions. Let execution be done.*

JUSTICE TAYLOR concurred in this opinion, but deceased before same was handed down.