STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |  |
|---|---|---|
| | } | |
| In re: Rowley Fuels Storage Tanks | } | Docket No. 202-9-05 Vtec |
| (Appeal of Rowley Fuels, Inc.) | } | |
| | } | |

### Decision and Order on Motion to Dismiss as Untimely or for Judgment as a Matter of Law

Appellant Rowley Fuels, Inc., appealed from a decision of the Vermont Agency of Natural Resources (ANR) determining that Appellant must satisfy the balance of a higher deductible under an amendment of 10 V.S.A. §1941, in order to be eligible for further reimbursement from the Petroleum Cleanup Fund. Appellant is represented by Michael S. Gawne, Esq.; ANR is represented by Jeanne Elias, Assistant Attorney General.

The Agency of Natural Resources has moved to dismiss the appeal as untimely, and as failing to state a claim upon which relief can be granted. We treat this motion as one for summary judgment or judgment as a matter of law; V.R.C.P. 12(b)(6) is not, strictly speaking, applicable to appeals such as this as no complaint is filed within which an appellant could "state a claim." V.R.E.C.P. 5(f). To the extent necessary to decide this motion, the following facts are undisputed unless otherwise noted.

Appellant Rowley Fuels, Inc., is the owner of an aboveground[1] bulk fuel storage tank facility located on Industrial Park Drive in the Town of Alburg, acquired from the previous owner, P. J. Medor, Inc. (Medor), in 2000. As of at least 1999, the property was known to contain leaking aboveground petroleum storage tanks requiring remediation.

The Petroleum Cleanup Fund, established in 1987 as 10 V.S.A. §1941, was created to provide financial assistance for the cleanup of petroleum contamination in Vermont. It

---

[1] It is spelled in the statute as a compound word without a hyphen.

1

is administered by the Secretary of ANR, who under the present version of the law "may authorize disbursements from the fund for the purpose of the cleanup and restoration of contaminated soil and groundwater caused by releases of petroleum from . . . aboveground storage tanks." 10 V.S.A. §1941(b). Aboveground tanks were added to the statute at least by 1997.

The statute established a deductible amount that must first be met by those seeking reimbursement from the Petroleum Cleanup Fund, before they may seek reimbursement for additional cleanup costs up to a total per-site reimbursement limit (also established in the statute). Prior to July 1, 2004, the statutory deductible for aboveground bulk fuel storage facilities was set at $1,000, while any reimbursement was limited to a total of $25,000 for any individual site.

Effective as of July 1, 2004, the legislature amended the statute, leaving the statutory deductible and reimbursement limits in place for aboveground storage tanks other than for bulk storage, but raising the statutory deductible to $10,000, and raising the total reimbursement limit to $1,000,000 for bulk storage tank sites. Compare 10 V.S.A. §1941(b)(1)(C) with §1941(b)(1)(D), (as amended by 2003, No.153 (Adj. Sess.), §1). The amendment did not address how to apply the new deductible and coverage limits to entities already obtaining reimbursement from the Petroleum Cleanup Fund.

In August of 1999, the ANR had first notified Medor that the property was eligible for participation in the Petroleum Cleanup Fund. After approving a cleanup work plan, the ANR approved reimbursement to Medor of expenses associated with the cleanup, subject to the $1,000 deductible. In January of 2000, after having paid the $1,000 deductible, Medor was granted reimbursement of an additional $853.50 in expenses from the Petroleum Cleanup Fund. Shortly thereafter, Medor transferred the property to Appellant. Between Appellant's acquisition of the property in 2000 and the effective date of the statutory amendment on July 1, 2004, Appellant received an additional $7,634 in reimbursement payments from the Petroleum Cleanup Fund.

On September 27, 2004, Appellant requested reimbursement of an additional $2,299.26 from the Petroleum Cleanup Fund. In a letter dated October 4, 2004, in response, an Environmental Engineer in the Sites Management Section of the Waste Management Division of the Department of Environmental Conservation of the ANR informed Appellant of the change to the payment structure, and explained that Appellant must now meet the balance of the new $10,000 deductible before the ANR would make any further reimbursements. Appellant's attorney wrote back explaining Appellant's position regarding contributions from the state's share until the original $25,000 state reimbursement limit would have been reached.

On March 10, 2005, the same Environmental Engineer in the Sites Management Section wrote back to Appellant, explaining that the Commissioner of Environmental Conservation and the Secretary of the ANR had reviewed the matter, and explained that the State would make no further reimbursement payments until Appellant had paid the contested invoice and future costs up to $6,712, for a total of $9,000 more, to meet the amended $10,000 deductible.

Although the March 10, 2005 letter mentioned that the Secretary of the ANR had reviewed the matter, the letter contained no indication that it was being issued as a decision of the Secretary or was a final appealable decision of the ANR. Despite the fact that ANR decisions had only then been appealable to the Environmental Court for a little more than a month,[2] nothing in the letter advised Appellant of the appropriate new appeal route, and nothing warned Appellant that the decision might become final if no appeal was taken.

Appellant attempted to appeal the March 10, 2005 Environmental Engineer's decision letter by serving a complaint and summons on the State on April 27, 2005, and

_____

[2] 10 V.S.A. §8504(a), enacted by 2003, No. 115 (Adj. Sess.), §74 (effective January 31, 2005, as provided in 2003, No. 115 (Adj. Sess.), §119, as amended by 2003, No. 122 (Adj. Sess.), §296).

filing it on May 3, 2005 in Chittenden Superior Court.  (Rowley Fuels, Inc. v. State of Vermont, Docket No. S0452-2005 CnC.)  The Superior Court granted the State's motion to dismiss for lack of jurisdiction because the appeal should have been filed in Environmental Court, but in its dismissal order held that the March 10, 2005 letter "did not satisfy the requirements of procedural due process[,] therefore [Rowley Fuels'] claim cannot be time barred."  Rowley Fuels, Inc. v. State of Vermont, Docket No. S0452-2005 CnC (Chittenden Sup. Ct., Sept. 22, 2005), slip op. at unnumbered page 3.  Appellant then promptly filed this appeal pursuant to 10 V.S.A. §8504(a), which provides that "any person aggrieved by an act or decision of the secretary" may appeal to the Environmental Court within thirty days "of the date of the act or decision."

Timeliness of the appeal

Uniformly, the procedural rules adopted by the Supreme Court for appeals to it (V.R.A.P. 4), for appeals to Superior Court from decisions of administrative agencies (V.R.C.P. 74(b)), and for appeals to Environmental Court (V.R.E.C.P. 5(b)(1)) provide that if a notice of appeal is mistakenly filed in an incorrect location within the appellate system, the receiving clerk is directed to note on the notice of appeal the date on which it was received and to forward the notice to the tribunal or court at which it should have been filed.  Such an incorrectly-filed notice is deemed to have been filed on the date on which it was first received at the incorrect location.  See also, Mohr v. Vill. of Manchester, 161 Vt. 562, 563 (1993) (mem.) (applying the V.R.A.P. 4 rule to an appeal taken from a planning commission decision to superior court, prior to the addition of the rule to V.R.C.P. 74(b)).  These rules are consistent with the preference of the judicial system that cases should be decided on their merits if possible. See, e.g., Shahi v. Ascend Financial Servs., Inc., 2006 VT 29, ¶3, n.1; Desjarlais v. Gilman, 143 Vt. 154, 158–59 (1983); and V.R.E.C.P. 1 ("a full and fair determination").  And see 12 V.S.A. §558, which provides additional time to bring a new action after an action has been dismissed for lack of jurisdiction, if the original action had

4

been timely filed.

In the present case, even if we use the April 27, 2005 date of service of the summons and complaint on the State in the mistakenly-filed superior court appeal, rather than the May 3, 2005 date on which it was filed with the Chittenden Superior Court, the appeal would have been untimely filed if dated from the March 10, 2005 letter or even from the date several days later on which it may have been received, unless Appellant would have then moved under V.R.A.P. 4 for permission to file a late appeal. V.R.A.P. 4 allows a motion to take a late appeal to be filed within thirty days after the expiration of the appeal period. However, neither of the ANR letters informed Appellant of his right to appeal, or of the procedures for filing such an appeal, or of the consequences of failing to file a timely appeal. Appellant therefore argues that it did not receive adequate notice of its rights to appeal the March 10, 2005 letter, and that therefore this appeal is not time barred.

The ANR argues that Appellant was not entitled to due process, including notice of its appeal rights, unless it had a property interest in reimbursements under the old payment structure, and that Appellant has no such property interest. However, a party's entitlement to notice of its rights to appeal does not depend upon that party's having a property interest in the outcome of the appeal. Notice of one's right to appeal does not depend on whether the underlying governmental program is a regulatory program that affects the property rights of the regulated entities, or whether it is a grants program under which the government has no obligation to hand out particular amounts of money. Rather, under our system of government, governmental entities are expected to "turn square corners" when dealing with citizens affected by governmental programs. In re McDonald's Corp., 146 Vt. 380, 386 (1985). If Appellant has a right to appeal a governmental decision, which it had in this instance at least as to the March 10, 2005 letter, then it has a right to be advised of that right of appeal to enable it to exercise that right. See, Town of Randolph v. Estate of White, 166 Vt. 280, 287 (1987). That is, one can be aggrieved by the procedure (or lack thereof) through which a grant was denied, without having any entitlement to the

5

issuance of that grant.

Accordingly, the ANR motion to dismiss this appeal as untimely is DENIED, and under the facts of this case we grant leave to file the appeal late as if the case had been filed in this Court at the outset. V.R.A.P. 4 and V.R.E.C.P. 5(a)(2).


Motion to Dismiss, treated as Motion for Judgment as a Matter of Law

The Secretary of ANR has broad discretion in authorizing disbursements from the Petroleum Cleanup Fund for the purposes of cleanup, 10 V.S.A. §1941(b), although, as the Superior Court noted, it does not have unfettered discretion either to make disbursements or arbitrarily and capriciously to cut off payments. Rowley Fuels, Inc. v. State of Vermont, Docket No. S0452-2005 CnC (Chittenden Sup. Ct., Sept. 22, 2005), slip op. at unnumbered page 4. However, nothing in the statute requires the ANR to give disbursements to applicants who meet certain criteria. Because the ANR retains discretion in awarding funds, an applicant has merely a unilateral expectation of receiving the benefit. See Kapps v. Wing, 404 F.3d 105, 115–16 (2d Cir., 2005). Appellant has no entitlement or vested interest in receiving particular amounts of disbursement from the fund. "A property interest arises when a person has a 'legitimate claim of entitlement' to a government benefit and not merely a unilateral expectation of receiving that benefit." Mellin v. Flood Brook Union School Dist., 173 Vt. 202, 216 (2001) (internal citations omitted).

Disbursements from the Petroleum Cleanup Fund essentially provide financial assistance from the State to facility owners and operators who would otherwise be fully liable for the costs of cleaning up their facilities. Payment of the original $1,000 deductible by Appellant's predecessor-in-interest did not create a contract between Appellant and the ANR, because Appellant's predecessor was already under an existing legal duty to clean up the facility. Nor was any 'contract' was formed under which an executive agency could have been required to follow the old statutory scheme after it had been amended. Rather, as no legislature can bind a future legislature, the 2000 Vermont Legislature was free to

6

amend that statutory scheme, to provide a greater total benefit of $1,000,000 rather than $25,000, but to require a deductible of $10,000 rather than $1,000. See, U.S. v. Winstar Corp., 518 U.S. 839, 872 (1996); Town of Waterbury v. Central Vermont Ry. Co., 93 Vt. 461, 465 (1919); Herrick v. Town of Randolph, 13 Vt. 525, 532 (1841).

Nor does Appellant have any right to reimbursement of costs under the old statutory scheme under theories of promissory or equitable estoppel. Appellant claims that its decision to purchase the contaminated property was made in reliance a "promise" by the ANR to reimburse cleanup costs after the initial $1,000, up to $25,000. The "promise" claimed by Appellant is the statement contained in an August 2, 1999 letter from the ANR to Medor stating that, "[b]ased on current information," the facility "may be eligible for participation in the Petroleum Cleanup Fund." (Emphasis added). The letter continued with a description of the owner's obligations, including paying for the initial $1,000 of the cleanup, and went on to state that the fund "will reimburse the tank owner or permittee for additional eligible cleanup costs of up to $25,000." The letter correctly described the then-existing statutory scheme, but made no promise that it would continue in future years; rather, it contained the disclaimer that it was "based on current information." Even if the existence of this letter did induce Appellant to purchase[3] the property, it would not have been reasonable for the ANR to have expected its letter to have been treated as a promise rather than merely as a description of the statutory reimbursement scheme in effect at the time, nor would it have been reasonable for the ANR to have expected it to induce the action of purchasing the property on the part of a third party, that is, Appellant. See, e.g., Tour Costa Rica v. Country Walkers, Inc., 171 Vt. 116, 120 (2000).

The elements of equitable estoppel are that "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party

---

[3] If Appellant would not have purchased the property but for reliance on the perpetual continuation of the then-existing statutory reimbursement scheme, Appellant could have made it a condition of the property transaction.

asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." My Sister's Place v. City of Burlington, 139 Vt. 602, 609 (1981) (internal quotations and citations omitted); and see In re Appeal of Griffin, 2006 VT 75 (mem.), ¶18, and cases cited therein.

There is no evidence that in 1999 the ANR was aware that, five years later, the Vermont Legislature would amend the Petroleum Cleanup Fund statute to provide a higher potential reimbursement for petroleum-contaminated properties such that purchased by Appellant, but to require a higher deductible amount. This is not a case in which one party has, though false language or conduct, induced another person to act to that person's detriment.

Moreover, the ANR did not write the 1999 letter with the intent to induce Appellant to buy the contaminated property. If anything, the ANR intended only that Appellant's predecessor apply to be considered for reimbursement from the Petroleum Cleanup Fund program as it then existed. The ANR is therefore not estopped from applying the amended statute to Appellant's reimbursement.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that the Agency of Natural Resources' Motion, treated as a Motion for Judgment as a Matter of Law, is GRANTED, concluding this appeal.

Done at Berlin, Vermont, this 31st day of July, 2006.

_____
Merideth Wright
Environmental Judge

8