STATE BOARD OF HEALTH *v.* VILLAGE OF ST. JOHNSBURY ET AL.

May Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed July 2, 1909.

*Public Health—Purity of Water—Orders and Regulations of Board of Health—Enforcement—Proper Parties—Constitutional Law—Extent of Police Power—Delegation—Judicial Power of Inquiry Into Policy and Wisdom of Legislation—Personal Liberty—Due Process of Law—Notice—Sufficiency.*

In a suit in chancery by the State Board of Health against a village to enforce an order of the Board prohibiting the furnishing of the village water for domestic purposes, the village clerk is not a proper party; but the bill is dismissed as to him without costs, as the orators are acting in their official capacity, and the State does not pay costs in cases distinctly of public concern.

Since it appears that the village trustees have the management of the village affairs, including its water system, subject to the ultimate control of the village, so that they can be decreed against in their official capacity, they are proper parties defendant, though not charged with anything amiss.

P. S. 5496, providing that the court of chancery may, upon application therefor by the State Board of Health, enforce any order that said Board may make under that section, contemplates that such suit shall be brought by said Board in its own name, and not by the State.

Our Bill of Rights declares that the people of this State by their legal representatives have the sole and inherent right of governing and regulating the internal police of the State, and that right, retained by the State when it became a member of the Union, embraces such reasonable rules and regulations, established by direct legislative enactment, as will protect the public health and safety; and the State may invest local or state boards, created for administrative purposes, with authority in some proper way to safeguard the public health and safety. The method of accomplishing those results is within the discretion of the State, provided that neither the powers of the general government, nor any constitutional provision of the State or United States are infringed.

The personal liberty secured by the Constitution is not unrestrained license to act according to one's will, but is liberty regulated by law, and is subject to such reasonable conditions and restraints as the public good requires.

Where, under the police power, the Legislature has exercised its discretion in providing a method for protecting the public against disease, it is not for the courts to determine as to the method that is likely to be the most effectual, unless the enactment comes within the rule that if a statute purporting to have been enacted for the protection of the public health, safety, or morals has no just relation to those objects, or is a manifest invasion of constitutional rights, it is the court's duty so to declare.

P. S. 5495, 5496, giving the State Board of Health general oversight of waters used by cities and villages as sources of water supply and authorizing that Board to prohibit the municipality from so using water which in the Board's opinion is so contaminated that its use would endanger public health, does not prescribe a method of protecting the public health so manifestly violative of the constitutional right of personal liberty as to warrant interference by the courts; and said Board had power thereunder to prohibit the furnishing and use of village water where it was so contaminated and impure that its use for domestic purposes was a menace to the public health.

P. S. 5496, giving the State Board of Health power to prohibit any village from using water which in the Board's opinion is so contaminated that its use would endanger public health, and providing that the court of chancery may, upon application by the Board, enforce any order which the Board may make under that section, does not make the Board's order final and conclusive, so that the court has no authority to inquire into its correctness, but gives the court discretion, to the proper exercise of which it must proceed on inquiry, and render judgment only after trial; and, hence, a hearing by the Board before making the order was not essential to due process of law.

Nor is the Board's order invalid as incapable of enforcement, since, if the court thinks it ought to be enforced, an order of its own would supervene and be of such a character that its enforcement would enforce the order of the Board.

An order by the State Board of Health served on village trustees, who had the management and control of village affairs, including its water system, that "You are hereby prohibited from furnishing or permitting to be furnished any water taken from the above described water source for domestic purposes in any way until" etc., was notice to the village, where the village was the only furnisher of water from that source for any purpose.

APPEAL IN CHANCERY.  Heard on demurrers to the bill at the June Term, 1908, Caledonia County, *Alfred A. Hall*, Chancellor.  Demurrers overruled, *pro forma*, and bill adjudged sufficient and taken as confessed.  Decree, *pro forma*, in accordance with the prayer of the bill.  The defendants appealed.  The opinion states the case.  It was agreed by all parties that, if the

Supreme Court on appeal should hold the bill sufficient, said decree should be reversed, *pro forma,* and the case be remanded with mandate that it be heard on its merits.

*Robert W. Simonds,* State's Attorney, for the orators.

Ample notice to meet the requirements of due process of law is by implication provided by the provision that the court of chancery "may" enforce the orders of the Board of Health. Such enforcement implies notice and trial. *Paulson* v. *Portland,* 16 Ore. 450; *State Railroad Tax Cases,* 92 U. S. 610; *Kentucky R. R. Tax Cases,* 115 U. S. 332; *Reetz* v. *Michigan,* 188 U. S. 505.

All personal and property rights must be held subject to the police power of the State in its efforts to preserve human life. *R. R. Co.* v. *County Commissioners,* 79 Me. 386; *Powell* v. *Good Health,* 114 Pa. St. 265; *Sawyer* v. *State Board of Health,* 125 Mass. 182; *City of Salem* v. *Eastern R. R. Co.,* 98 Mass. 431; *Pollinsky* v. *People,* 73 N. Y. 65; *New York* v. *Milu,* 11 Pet. 132; *State* v. *Schlemmer,* 42 L. A. Ann. 1166; *Kennedy* v. *Board of Health,* 2 Pa. St. 366.

*Harry Blodgett* and *Elisha May* for the defendants.

Statutes like the one here in question are to be strictly interpreted, and powers not expressly delegated cannot be lawfully exercised. *Hurst* v. *Warner,* 102 Mich. 258, 47 Am. St. Rep. 525; *Town* v. *Stomberg,* 68 Miss. 469, 24 Am. St. Rep. 281; *Wilson* v. *A. & G. R. R. Co.,* 77 Miss. 714, 78 Am. St. Rep. 543.

The statute in question does not afford due process of law in that it allows the Board of Health to condemn property without notice or hearing. "If notice and hearing are necessary they must be required by law." McGehee, Due Process of Law, 82; *Stuart* v. *Palmer,* 74 N. Y. 183; *Tanton* v. *Taylor,* 116 Mass. 254; *Munn* v. *Corbin,* 8 Colo. App. 113; *Weil* v. *Ricord,* 24 N. J. Eq. 169; *Hutton* v. *Camden,* 39 N. J. L. 122; *Mulligan* v. *Smith,* 39 Cal. 206; *Philadelphia* v. *Scott,* 81 Penn. St. 80, 22 Am. St. Rep. 738; *People* v. *Yonkers,* 140 N. Y. 35, 37 Am. St. Rep. 522; *N. Y. Health Board,* 145 N. Y. 32, 45 Am. St. Rep. 579; *Quimby* v. *Hazen,* 54 Vt. 132; *State* v. *Stimson,* 78 Vt. 135; *Turpin* v. *Lemon,* 187 U. S. 51, 47 L. ed. 70; *Holden* v. *Hardy,* 169 U. S.

366; *Covington, etc. Co.* v. *Sandford,* 164 U. S. 578, 41 L. ed. 560; *Smyth* v. *Ames,* 169 U. S. 466, 42 L. ed. 819; *Brown* v. *Denver,* 7 Colo. 305; McGehee, Due Process of Law, 26; *Lowe* v. *Conroy,* 120 Wis. 151; *Newark* v. *Hunt,* 50 N. J. L. 308.

The court of chancery will not suppress a nuisance without clear and satisfactory proof of its existence after full hearing to all parties interested. An injunction will not be granted to enforce an ordinance or regulation until it has been judicially determined that the claimed nuisance exists. *Mayor* v. *Smith,* 64 N. H. 380, 10 Atl. 700; *Mayor* v. *Thorne,* 7 Paige 261; *Waupun* v. *Mower,* 34 Wis. 450, 17 Am. Rep. 446; *Aitken* v. *Wells River,* 70 Vt. 308.

This suit is not properly brought in the name of the State Board of Health. The State is the only proper party orator in such a case. *State ex. rel. Board of Health* v. *Henzler,* 41 Atl. 228; *State ex rel. Board of Health* v. *Inhabitants, etc.,* 32 Atl. 603; *Board of Health* v. *N. Y. C.,* 47 N. J. Eq. 1, 19 Atl. 1098; *State ex rel. Board* v. *Hutchinson,* 39 N. J. Eq. 560; *Buckstaff* v. *Oshkosh,* 92 Wis. 520.

ROWELL, C. J. This is a bill in chancery brought by and in the names and official capacity of the persons composing the State Board of Health, against the village of St. Johnsbury and divers takers of water resident therein, for the enforcement of an order made by the Board, prohibiting the furnishing and the use of the village water for domestic purposes till such a time. The order was made and issued in July, 1906, and recited that the Board found and was of the opinion that the water taken from the Passumpsic River at the point where the village was then taking it, and as supplied by it to the inhabitants thereof by its water system, was so contaminated, unwholesome, and impure that the use of it for domestic purposes endangered the public health; and it prohibited the drawing and the use thereof for said purposes until, in the opinion of the Board, the danger ceased. But it expressly permitted the drawing and use for laundry purposes, flushing water-closets, sprinkling lawns and streets, watering gardens, and for stable purposes. The order was served on the trustees of the village, but not on the village itself, on the school directors, and a hundred and thirty-four takers, a large number of whom obeyed it, but many did not,

and they are defendants. After the bill was brought, the village itself, its newly elected trustees and its clerk, were made defendants.

The statute under which the order was made gave the Board the general oversight and care of all waters, streams, and ponds used by any cities, towns, villages, or public institutions, or by any water or ice companies, in this State, as sources of water supply, and of all springs, streams, and water courses tributary thereto; and authorize the Board to prohibit any town, city, village, public institution, individual, or water or ice company, from using water or ice from any given source whenever in its opinion the same was so contaminated, unwholesome, or impure that the use thereof endangered the public health. The statute as it was when the bill was brought, and as it now is, provides that the court of chancery "may," on application therefor by the Board, enforce any order, rule, or regulation that the Board may make under and by virtue thereof. P. S. 5496.

The defendant Elisha May demurs to the bill for that under its allegations the Board has no authority to maintain the bill in its own name; that the statute does not provide for notice of a hearing by the Board, nor for notice of any action by it to condemn the water; and that it does not allege that any notice was given in these respects.

The village, its three trustees who were made defendants after the bill was brought, and Preston E. May, its clerk, jointly demur for want of equity, and because the bill does not charge them nor any of them with any shortcomings nor wrongdoings, nor contain any prayer for relief against them, and because said May is not a proper party. They further demur for substantially the same causes assigned in the demurrer of the defendant Elisha May.

The bill discloses no reason for making Preston E. May a party defendant except that he is clerk. But that is no reason, for he is a mere recording officer, and not an administrative officer. The bill should be dismissed as to him, but without costs, for the orators are acting in their official capacity as State officers, and to make them pay costs would be making the State pay costs, which it does not do in cases distinctively of public concern, certainly. But the trustees are proper parties though not charged with anything amiss, for the bill alleges that they

have the management and control of the affairs of the village, including the water system, subject to the ultimate control of the village, and therefore they can be decreed against in their official capacity if need be. *North Troy School District* v. *Town of Troy*, 80 Vt. 16, 24, 66 Atl. 1033. And the village is of course a proper, if not a necessary, party, for it owns the water system in question.

It is objected that the bill should have been brought by the State and not by the Board. But we construe the statute to mean that it may be brought by the Board.

It is further objected that the prohibition authorized by the statute must be absolute and not limited; that no order could lawfully be made by the Board in restraint of the personal liberty of the citizen, for if water was furnished by the village in its mains and taken into the houses, the Board had no authority to punish those who used it for domestic purposes; that the owners of the houses had the right to drink it, and their tenants had the same right, even though forbidden by them; that the order cannot be enforced against either, nor can either be dealt with by the court for contempt; that the Board could, at most, only stop the village from pumping water into its mains, but that the court cannot effectually enforce the order even if binding without notice or opportunity to be heard, nor make the order prayed for until it has heard all the matters in issue; and that the bill does not present any issue that the defendants can answer, and demand a trial of *de novo* as to the fitness of the water for domestic purposes.

As to the personal liberty, our Bill of Rights declares that government is, or ought to be, instituted for the common benefit, protection, and security of the people, nation, or community, and not for the particular emolument or advantage of any single man, family, or set of men who are a part only of that community. Closely allied to this fundamental proposition is the further declaration that the people of the State, by their legal representatives, have the sole, inherent, and exclusive right of governing and regulating the internal police of the State. This right the State did not surrender when it became a member of the Union, but retains it still; and that right, to say the least, embraces such reasonable rules and regulations, established directly by legislative enactment, as will protect the public health

and the public safety. And the State may invest local or state boards, created for administrative purposes, with authority in some proper way to safeguard the public health and the public safety. The way in which these results are to be accomplished is within the discretion of the State, provided the powers and functions of the General Government are not thereby infringed, nor any constitutional provision of the State nor the United States.

We come now to consider more especially what personal liberty is as secured by constitutional provision; and on this question we refer to *Jacobson* v. *Massachusetts,* 197 U. S. 11, 25 Sup. Ct. 358, 49 L. ed. 643, which affirms the legality of compulsory vaccination for the prevention of small pox. There the plaintiff in error insisted that his liberty was invaded when the Commonwealth subjected him to fine and imprisonment for refusing to submit to vaccination; that the compulsory vaccination law was unreasonable, arbitrary, and oppressive, and therefore hostile to the inherent right of every freeman to care for his own body and health in such way as to him seemed best; and that the execution of such a law was nothing short of an assault upon his person. But the Court said that the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be at all times and in all circumstances wholly free from restraint; that there are manifold restraints to which every person is necessarily subject for the common good; that on any other basis organized society could not exist with safety to its members; that society based on the principle that every man is a law unto himself, would soon be confronted with disorder and anarchy; that real liberty could not exist under the operation of a principle that recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that might be done to others; that that Court had more than once recognized it as a fundamental principle that persons and property are subject to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the State, of the perfect right of the legislature to do which, no question was ever raised, nor, on general principles, ever can be raised, as far as natural persons are concerned. It is said in *Crowley* v. *Christensen,* 137 U. S.

86, 11 Sup. Ct. 13, 34 L. ed. 620, that the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority essential to the safety, health, peace, good order, and morals of the community; that even liberty itself, the greatest of all rights, is not unrestrained license to act according to one's own will; that it is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others, and is, therefore, liberty regulated by law.   And this Court said in *Lawrence* v. *Rutland Railroad Co.*, 80 Vt. 370, 383, 67 Atl. 1091, 15 L. R. A. 350, concerning the right to contract, that it is not an absolute right, but subject, on general principles, to such reasonable restraint as the public good requires; that it is the *general* right to acquire property, and by necessary implication the *general* right to contract concerning it, that the Constitution protects; but that that protection does not make those rights absolute in all respects, for if it does, what becomes, the courts asks, of the police power, which inheres in every free government, and is based on the maxim that you shall so use your own property as not to injure the rights of others, which is a universal and pervading obligation, and a condition on which all property is held, the application of which to particular conditions must necessarily be within the reasonable discretion of the Legislature; and that when such discretion is exercised in a given case by means appropriate and reasonable, not oppressive nor discriminatory, it is not subject to constitutional objection.

It is to be noted that the demurrer admits the truth of the allegation of the bill that many analyses of the water showed it to be contaminated, unwholesome, and impure, and of such a character and quality that its use for domestic purposes was a menace and a danger to the public health.

If the mode adopted by the State for the protection of the public health and safety of its local communities proves to be objectionable, inconvenient, or even distressing, to some, if nothing more can reasonably be affirmed against the statute, the answer is that it was the duty of the constituted authorities primarily to keep in view the welfare and safety of the many, and not to permit their interests to be subordinated to the wishes nor the convenience of the few.   But there is, of course, as said in the *Jacobson* case, a sphere within which the individual may

assert the supremacy of his own will, and rightfully deny the authority of the government to interfere with its exercise. It is equally true, however, that in every case where the constituted authorities are charged with the duty of conserving the welfare and safety of the general public, the rights of the individual in respect of his liberty may at times, under the pressure of great danger, be subjected to such restraint, to be enforced by reasonable rules and regulation, as the safety of the general public may demand. And it is not for the courts to determine as to the mode likely to be most effective to protect the public against disease, unless that which the Legislature has done comes within the rule that if a statute purporting to have been enacted for the protection of the public health, the public safety, or the public morals, has no just relation to those objects, or is unquestionably a plain, palpable invasion of constitutional rights; in which case it is the duty of courts so to adjudge, and thereby give effect to the Constitution. But the statute under consideration cannot be said to be palpably in conflict with the Constitution, State nor Federal; nor can it be confidently asserted that the means prescribed by it have no just relation to the protection of the public health and the public safety. It must be held, therefore, as the case is presented, that the Board had authority, if properly exercised, to restrain the defendants as it did.

But it is said that it did not properly exercise its authority in this behalf, for that its proceedings lack due process of law in that no notice of its proposed action was given nor opportunity to be heard afforded. The defendants do not claim, as we understand their brief, and could not well claim that notice and an opportunity to be heard before the Board were essential to due process of law, unless the order is final; but they claim that it is the intention of the statute to make it final and conclusive, and to give the court no authority to inquire into its correctness, but only to enforce it. But the statute does not mean that. It says that the court "may" enforce the order. This evidently means, not that it must enforce it as a duty, but only that it may enforce it or not in its discretion, to the proper exercise of which, it must proceed on inquiry, and render judgment only after trial. So the order is not final and conclusive, and the bill presents an issue that the defendants can answer,

and they may answer, and have a trial on the merits, as agreed by counsel.

The objection that the order cannot be enforced if valid, is not sustainable, for if the court thinks it ought to be enforced, an order of its own will supervene upon it, and be of such a character that its enforcement will enforce the order of the Board.

It is further objected in a supplemental brief that the order of the Board is not against the village; that notice of it was never served upon the village; and that consequently it cannot be enforced against the village. But notice of it was served upon the trustees of the village, and that was notice to the village, as they were its chief executive officers. *Nichols* v. *City of Boston,* 98 Mass. 39, 93 Am. Dec. 132. So notice to the president of a bank concerning matters within the sphere of his official authority, is notice to the bank. *Porter* v. *Bank of Rutland,* 19 Vt. 410, 425. And the language of the order clearly embraces the village. It is: "You are hereby prohibited from furnishing, or permitting to be furnished, any water taken from the above described water source for domestic purposes in any way until," etc., and the village was the only furnisher of water from that source for any purpose.

*Decree reversed as to Preston E. May and bill dismissed as to him without costs. Decree reversed pro forma as to the other defendants. Cause remanded.*