### Jacqueline R. and Jackson B. Beecham, M.D. v. Patrick J. Leahy and James M. Jeffords

[287 A.2d 836]

No. 1-72

Present: Shangraw, Barney, Smith and Keyser, JJ., and Daley, Supr. J.

Opinion Filed January 14, 1972

Reargument Denied February 8, 1972

*Matthew I. Katz,* Vermont Legal Aid, Inc., Burlington, for Jacqueline R.

*Willis E. Higgins,* Starksboro, for Jackson B. Beecham, M.D.

*James M. Jeffords,* Attorney General, and *H. Russell Morss,* Assistant Attorney General, for James M. Jeffords.

*Patrick J. Leahy, pro se.*

**Barney, J.** This is a declaratory judgment proceeding intended to test the validity of Vermont criminal law relating to abortions. The plaintiffs are a certain unmarried pregnant woman and a doctor she has consulted in connection with her condition. The matter is here following a ruling sustaining the motion to dismiss interposed by the defendant state's attorney of the county of residence and by the attorney general of the state, the enforcement officers most probably concerned.

Since it is here on appeal from dismissal, the factual circumstances are those well pleaded in the original complaint, for review purposes. The woman involved was confirmed in her pregnancy by her doctor, who refused to perform an abortion for her as she requested, on the grounds that it would subject him to criminal prosecution. She is a welfare recipient unable to go outside the state for relief. The doctor found no indication that the plaintiff was likely to die if the pregnancy ran to term but did give, as his professional judgment, that a termi-

·nation of pregnancy through a medically induced and supervised abortion is medically indicated in order to secure and preserve the plaintiff's physical and mental health. He is prepared to carry out the appropriate medical procedures, on the basis of this diagnosis, but for the expectation of prosecution under 13 V.S.A. § 101:

> "A person who wilfully administers, advises or causes to be administered anything to a woman pregnant, or supposed by such person to be pregnant, or employs or causes to be employed any means with intent to procure the miscarriage of such woman, or assists or counsels therein, unless the same is necessary to preserve her life, if the woman dies in consequence thereof, shall be imprisoned in the state prison not more than twenty years nor less than five years. If the woman does not die in consequence thereof, such person shall be imprisoned in the state prison not more than ten years nor less than three years. However, the woman whose miscarriage is caused or attempted shall not be liable to the penalties prescribed by this section."

The first concern is the authority of this Court to rule on the issues put forward in the petition. It was strenuously argued by the defendants that the pleadings demonstrate that no justiciable controversy, such as is required by the provisions of the declaratory judgment procedure, 12 V.S.A. §§ 4711–4725, V.R.C.P. 57, is here present. However poignant the plight of the parties if the proceedings seek no more than an advisory opinion, this Court is barred from responding. *In re House Bill 88*, 115 Vt. 524, 529, 64 A.2d 169 (1949). That case construes the judicial power conferred by the state constitution as not including, "the giving of an opinion upon a question of law not involved in actual and *bona fide* litigation brought before the Court in the course of appropriate procedure." The opinion was concerned with the giving of advisory opinions by this Court to the legislative or executive departments at their request. The provisions of the declaratory judgment act had then been in our law for some time.

██ The measure of declaratory relief has had broader definition. Where the action does not derive from litigation already commenced, the consequences giving rise to the seeking of declaratory relief must be set out so that the court can see they are based upon a reasonable and realistic expectation of their actual occurrence and not on a concern merely anticipatory or feared. *Gifford Hospital* v. *Randolph,* 119 Vt. 66, 70–71, 118 A.2d 480 (1955). In cases where the circumstances for criminal prosecution are already concededly present and beyond the power of the potential respondent to change, this Court has said that he need not wait to become a respondent in a criminal action in order to test the validity of the statute or ordinance upon which such a criminal charge would be based. *Vt. Salvage Corp.* v. *St. Johnsbury,* 113 Vt. 341, 353, 34 A.2d 188 (1943). Having in mind the constraints against purely advisory opinions already mentioned, no Vermont case has gone to the point of permitting resort to the declaratory device where the action or activity to be tested is still only anticipatory and subject to voluntary avoidance. In such a circumstance, the party will ordinarily be left to interposing his defenses in the prosecutorial action itself, if one is brought. See *Poe* v. *Ullman,* 367 U.S. 497, 506–07 (1961).

██ This is the situation of the doctor, in this case, as a party. He is under no compulsion, in any legal sense, to accede to the plaintiff's request for an abortion. Should he undertake it, it must be considered an action taken in the full light of the possible consequences comprehended in the statute, and his defenses to charges under it will be adjudicated as part of the criminal action.

██ The position of the other plaintiff is different. A close examination of her circumstances is necessary to develop the true legal substance of her situation. To begin with, the prohibitory provisions of 13 V.S.A. § 101 specifically do not apply to her. The legislature, by this act, has not denied her the right to be aborted. As to her, her personal rights have been left to her, and there is no legislative declaration saying that her own concerns for her personal integrity are in any way criminal or proscribed.

As to her, then, the law is left as it was at the time of the adoption of our constitution. 1 V.S.A. § 271. The authorities seem generally to agree that such proscriptions as there were against abortion certainly did not come into play until the fetus had "quickened," if indeed it was then ever a separate crime from homicide. *State* v. *Cooper*, 22 NJL 52, 54 (1849). See also Note: *The Law of Criminal Abortion*, 32 Ind. L.J. 193–94 (1956), Note: *Abortion Reform* 21 WRLR 521, 526–27; L. Lader, *Abortion* 78 (1966).

■ With this implicit recognition by the legislature of the plaintiff's contended-for personal rights, the present statute, to that extent cannot be faulted. The purpose of the statute is said to be for the protection of the plaintiff. *State* v. *Howard*, 32 Vt. 380, 399 (1859). The protection is against interference with her condition, real or supposed, by outside parties. As *State* v. *Bartlett*, 128 Vt. 618, 270 A.2d 168 (1970), holds, insofar as this prevents unskilled and untrained persons from acting in an area properly medical, the statute is valid and necessary.

The stringent restrictions on the exercise of expert and informed judgment by doctors with reference to their patients stands differently. Indeed, the asserted purpose of protecting the pregnant woman's health rings seriously false. On the one hand the legislation, by specific reference, leaves untouched in the woman herself those rights respecting her own choice to bear children now coming to be recognized in many jurisdictions. Sikora, *Abortion and the Law*, 1 Environmental Affairs 469, 474–75 (1971). Yet, tragically, unless her life itself is at stake, the law leaves her only to the recourse of attempts at self-induced abortion, uncounselled and unassisted by a doctor, in a situation where medical attention is imperative.

■ This situation is subject to the charge of hypocrisy, where the right reserved in words is so circumscribed by the provisions of the statute as to amount to its withdrawal in fact. Where is that concern for the health of the pregnant woman when she is denied the advice and assistance of her doctor? There is no doubt but there is a place for regulation of medical practice for the protection of the health and well-

170

being of citizens in this area as in other areas of medical competence. This is a legitimate legislative concern. *State* v. *Quattropani*, 99 Vt. 360, 362–63, 133 A. 352 (1926).

■ But the present statute is not regulative, but prohibitive. Although it avoids confrontation with the rights of this plaintiff, it unlawfully impinges upon them to a measure beyond the justifications of governmental action. *Vt. Woolen Corp.* v. *Wackerman*, 122 Vt. 219, 224, 167 A.2d 533 (1961) ; *State* v. *Quattropani, supra,* 99 Vt. at 363. Admittedly, the precise limits of such rights have not been enunciated with finality. It is an appropriate area for legislative action, provided such legislation does not, as the present law does, restrict to the point of unlawful prohibition. See *St. Johnsbury* v. *Thompson,* 59 Vt. 300, 308, 9 A. 571 (1887). But as the law now stands, barring, as it does, the medical aid the plaintiff seeks in her present circumstances, it is invalid, and cannot be resorted to by way of a criminal prosecution against the doctor.

■ We have left untouched until now the remaining question, relating to justiciable controversy, in this plaintiff's case. This was done because to adequately develop the justification for according this plaintiff standing to maintain this suit, development of the full impact of the law upon her rights was necessary. By reducing her rights to ephemeral status without confronting them, the ability of the plaintiff to produce a case or controversy in the ordinary sense is likewise frustrated. She cannot sue the doctor for an action by him that cannot be compelled. She is not herself subject to legal action, by statutory exemption. Yet a very real wrong, in the eyes of the law, exists, as has been developed. Therefore, under the provisions of 12 V.S.A. § 4711 and the power to grant extended relief therein granted, we declare that she is entitled to proceed in her action founded on her petition. *Gifford Hospital* v. *Randolph, supra,* 119 Vt. at 70.

■ By this decision, we hold that the legislature, having affirmed the right of a woman to abort, cannot simultaneously, by denying medical aid in all but cases where it is necessary to preserve her life, prohibit its safe exercise. This is more

than regulation, and an anomaly fatal to the application of this statute to medical practitioners. See *United States* v. *Vuitch,* 402 U.S. 62, 28 L.Ed.2d 601, 608–09, 91 S.Ct. 1294, 1298–99 (1971).

*The dismissal of the action as to the plaintiff Beecham is affirmed; the dismissal of the action as to Jacqueline R. is reversed and the cause remanded.*

**Daley, Supr. J.,** dissents.

**Chief Justice Holden** took no part in the hearing or disposition of this case.

## On Reargument

**Barney, J.** The defendant, James M. Jeffords, Attorney General, requests permission to reargue this case. Among other grounds, he asserts, and it seems not to be denied, that the plaintiff, Jacqueline R., at some time since the appeal was heard, has had an out-of-state abortion. The opinion was rendered several days prior to notice of this circumstance being given to this Court. From this, the defendant argues that the opinion ought to be vacated.

 There is no doubt but that this situation affects the disposition to be ordered here, and the final entry, insofar as it concerns Jacqueline R., will require appropriate amendment. However, since there existed a real controversy, with contested issues for disposition by this Court, at the time of hearing, and since no ground for withholding the decision was made known before release, it will not be withdrawn.

Whatever the later course of the litigation, a justiciable issue was then before the Court and a decision properly rendered. The probability that intervening circumstances will prevent the factual issues from reaching resolution has never nullified decisions on the sufficiency of pleadings or similar preliminary questions. See *Avery* v. *Bender,* 126 Vt. 342, 344, 230 A.2d 786 (1967).

Although dealt with in the opinion, the basis for the invalidation of the application of 13 V.S.A. § 101 to doctors is claimed to be unclear, and argument was presented to that point in connection with the hearing on this motion. In view

of the great public concern over this whole question, at the expense of some repetition, we will comment further on the issue.

It is the function of the judicial branch to pass upon the appropriateness and reasonableness of the legislative exercise of the police power. *State* v. *Haskell*, 84 Vt. 429, 431, 79 A. 852 (1911). The legislature, in acting to implement the protection and preservation of those rights of "enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining happiness and safety" set out in Chapter I, Article 1, of the Vermont Constitution, is exercising its sovereign power, otherwise known as the police power. *State* v. *Quattropani*, 99 Vt. 360, 362–63, 133 A. 352 (1926).

If this power is invoked through means or methods which are unreasonable, inappropriate, oppressive or discriminatory, constitutional limitations are transgressed, individual rights are invalidated and the action is void. *State* v. *Morse*, 84 Vt. 387, 394, 80 A. 189 (1911). Even if a statute purports to have been enacted for the protection of public health, safety or morals, if it has no just relation to such objects, or is a plain and palpable invasion of constitutional rights, the courts have a duty to so adjudge and thereby give effect to the Constitution. *Board of Health* v. *St. Johnsbury*, 82 Vt. 276, 285, 73 A. 581 (1909).

As we have said, this is the infirmity of the present statute in that it, without reason or warrant, deprives a woman of medical aid, even though she may be afflicted in body or mind, or both, short of imminent death, in relation to the exercise of a right recognized and allowed by the very same statute. The opinion as originally filed was based on this proposition.

The defendant has advanced other grounds for reargument, and for reconsideration of the opinion. Insofar as those contentions relate to matters treated in the original opinion, reargument will not lie. *Griffin* v. *Griffin and Bank of Waterbury*, 125 Vt. 425, 439, 217 A.2d 400 (1966). Nor has there been demonstrated, with respect to the issues of law presented under the petition for declaratory judgment, that anything has been misapprehended or overlooked by this Court. There-

fore, the motion will not be granted. *Eagle Square Mfg. Co.* v. *Vt. Mut. Fire Ins. Co.*, 125 Vt. 221, 227, 212 A.2d 636 (1965).

*Motion for reargument denied. Let the entry as to Jacqueline R., as plaintiff, be amended to provide for dismissal, and, as so amended, let the entries go down.*

**Daley, J.,** dissents.